WALLER, CHIEF JUSTICE, FOR THE COURT:
 

 ¶ 1. Richard Gerald Jordan was sentenced to death following his conviction on charges of kidnapping and murdering Edwina Marter in 1976. In his Second Successive Petition for Post-Conviction Relief, Jordan challenges the Mississippi Department of Corrections' (MDOC) using midazolam as the first drug in its three-drug lethal-injection protocol. According to Jordan, midazolam does not meet the requirements set forth in Mississippi Code Section 99-19-51(1) (Supp. 2018), which directs MDOC to use "an appropriate anesthetic or sedative" as the first drug. Because Jordan failed to provide sufficient support to warrant an evidentiary hearing, his petition is denied.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. In January 1976, Jordan traveled to Gulfport, contacted a local bank, and asked to speak with a loan officer. After Jordan spoke with Charles Marter, the loan officer, Jordan found Marter's home address in a phone book and went to Marter's home. Pretending to be a phone-company employee, Jordan entered Marter's home. Marter's wife, Edwina Marter, and their three-year-old child were home. Jordan abducted
 Edwina from the home and forced her to drive to a secluded area in the DeSoto National Forest.
 

 ¶ 3. Jordan fatally shot Edwina in the back of the head. He then called Charles, informed Charles that he had kidnapped Edwina, and requested $25,000 in ransom. Jordan assured Charles that Edwina was alive and concerned for her children. After multiple attempts, Jordan retrieved the ransom money. He was arrested the following day. Jordan confessed to the crime and told investigators where to find Edwina's body.
 

 ¶ 4. A jury convicted Jordan of capital murder in 1976. Shortly thereafter, the law of capital trials changed, requiring separate trials for the guilt and sentence phases.
 
 See
 

 Gregg v. Georgia
 
 ,
 
 428 U.S. 153
 
 ,
 
 96 S.Ct. 2909
 
 ,
 
 49 L.Ed.2d 859
 
 (1976) ;
 
 Jackson v. State
 
 ,
 
 337 So.2d 1242
 
 (Miss. 1976),
 
 superseded by statute on other grounds as recognized in
 

 Gray v. State
 
 ,
 
 351 So.2d 1342
 
 (Miss. 1977). In accordance with
 
 Jackson
 
 , Jordan was retried and again convicted of capital murder and sentenced to death. We affirmed Jordan's conviction and sentence.
 
 Jordan v. State
 
 ,
 
 365 So.2d 1198
 
 (Miss. 1978).
 

 ¶ 5. Finding that the sentencing-phase jury instructions did not provide clear and objective standards for aggravating factors, the United States Court of Appeals for the Fifth Circuit vacated Jordan's sentence on petition for writ of habeas corpus and remanded for resentencing.
 
 Jordan v. Watkins
 
 ,
 
 681 F.2d 1067
 
 (5th Cir. 1982). In 1983, Jordan was sentenced to death again. We affirmed.
 
 Jordan v. State
 
 ,
 
 464 So.2d 475
 
 (Miss. 1985). Finding that Jordan had not been allowed to present evidence of good behavior, the United States Supreme Court vacated Jordan's death sentence.
 
 Jordan v. Mississippi
 
 ,
 
 476 U.S. 1101
 
 ,
 
 106 S.Ct. 1942
 
 ,
 
 90 L.Ed.2d 352
 
 (1986).
 
 See also
 

 Skipper v. South Carolina
 
 ,
 
 476 U.S. 1
 
 ,
 
 106 S.Ct. 1669
 
 ,
 
 90 L.Ed.2d 1
 
 (1986).
 

 ¶ 6. On remand, Jordan entered into an agreement with the State to accept a sentence of life imprisonment without the possibility of parole. A few years later, Jordan filed a motion for post-conviction relief, asking that his sentence be corrected or amended to a sentence of life imprisonment with the possibility of parole under
 
 Lanier v. State
 
 ,
 
 635 So.2d 813
 
 (Miss. 1994),
 
 overruled on other grounds by
 

 Twillie v. State
 
 ,
 
 892 So.2d 187
 
 (Miss. 2004). Because life without parole was not an option under the controlling statute at that time- Mississippi Code Section 97-3-21 (1987)-we remanded for another sentencing trial.
 
 Jordan v. State
 
 , No. 95-KP-00113-SCT (Miss. Aug. 7, 1997). Jordan was sentenced to death again, and we affirmed the sentence.
 
 Jordan v. State
 
 ,
 
 786 So.2d 987
 
 (Miss. 2001). The United States Supreme Court denied Jordan's petition for writ of certiorari.
 
 Jordan v. Mississippi
 
 ,
 
 534 U.S. 1085
 
 ,
 
 122 S.Ct. 823
 
 ,
 
 151 L.Ed.2d 705
 
 (2002).
 

 ¶ 7. Jordan filed an application for post-conviction relief, which this Court denied.
 
 Jordan v. State
 
 ,
 
 912 So.2d 800
 
 (Miss. 2005). Then, Jordan sought habeas corpus relief in the United States District Court for the Southern District of Mississippi. In 2010, the district court denied habeas relief and Jordan's request for a certificate of appealability (COA).
 
 Jordan v. Epps
 
 ,
 
 740 F.Supp.2d 802
 
 (S.D. Miss. 2010). Jordan then asked the Fifth Circuit to grant a COA; in 2014, the Fifth Circuit denied relief.
 
 [1]
 

 Jordan v. Epps
 
 ,
 
 756 F.3d 395
 
 (5th Cir. 2014). Next, Jordan filed a petition for
 writ of certiorari with the United States Supreme Court. Before the Supreme Court ruled on Jordan's petition, Jordan filed an action, pursuant to
 
 42 U.S.C. § 1983
 
 in the United States District Court for the Southern District of Mississippi, challenging Mississippi's lethal-injection protocol.
 
 Jordan v. Fisher
 
 , No. 3:15-cv-00295-HTW-LRA. The United States Supreme Court denied Jordan's petition for writ of certiorari on June 29, 2015.
 
 Jordan v. Fisher
 
 , --- U.S. ----,
 
 135 S.Ct. 2647
 
 ,
 
 192 L.Ed.2d 948
 
 (2015).
 

 ¶ 8. While Jordan's § 1983 case was pending in district court, on July 28, 2015, the State filed a Motion to Reset Execution Date in this Court. Before this Court ruled on the State's motion, the district court entered an injunction preventing the State from using "pentobarbitol, specifically in its compounded form, or midazolam, to execute any death row inmate."
 
 Jordan
 
 , No. 3:15-cv-00295-HTW-LRA. The State appealed the district court's order, and the Fifth Circuit vacated the injunction and remanded.
 
 Jordan v. Fisher
 
 ,
 
 823 F.3d 805
 
 (5th Cir. 2016).
 

 ¶ 9. Jordan filed another petition for writ of certiorari on September 26, 2016. The Supreme Court denied Jordan's petition on February 21, 2017.
 
 Jordan v. Fisher
 
 , --- U.S. ----,
 
 137 S.Ct. 1069
 
 ,
 
 197 L.Ed.2d 188
 
 (2017). Jordan's § 1983 suit remains pending before the district court.
 

 ¶ 10. In 2016, Jordan filed another petition for post-conviction relief with this Court.
 
 Jordan v. State
 
 ,
 
 224 So.3d 1252
 
 (Miss. 2017). He raised two issues: (1) whether the State's use of midazolam as part of the three-drug lethal-injection protocol violated Mississippi Code Section 99-19-51 because it is not an "ultra-short acting barbiturate or other similar drug," and (2) whether execution of an inmate more than forty years after he was first sentenced to death violates the Eighth Amendment's prohibition against cruel and unusual punishment. At the time Jordan filed his petition, Section 99-19-51 required MDOC to use an "ultra-short acting barbiturate or other similar drug" as the first drug of the lethal-injection protocol.
 

 ¶ 11. While the petition was pending before this Court, the Mississippi Legislature amended Section 99-19-51. The amendment substituted the requirement for an "ultra-short acting barbiturate or other similar drug" for the current mandate that MDOC use an "appropriate anesthetic or sedative[.]" Miss. Code Ann. 99-19-51(1) (Supp. 2018). Due to the amendment, this Court concluded that Jordan's statutory-based challenge was moot and "decline[d] to address whether midazolam is or is not a permissible drug under the current statute."
 
 Jordan
 
 ,
 
 224 So.3d at 1253
 
 . Regarding the second issue, this Court denied relief, finding that the forty-year delay does not amount to cruel and unusual punishment.
 

 Id.
 

 ¶ 12. Jordan filed a petition for writ of certiorari in the United States Supreme Court, challenging this Court's decision to deny relief for the second issue. He raised two issues in that petition: (1) "Whether incarcerating a prisoner over four decades awaiting execution, even after the State found at one point that a life without parole sentence was appropriate, violates the Eighth Amendment because it fails to serve any legitimate purposes"; and (2) "Whether incarcerating a prisoner over four decades awaiting execution, with over half that time attributable to repeated constitutional violations in a succession of sentencing hearings, violates the Eighth Amendment because it fails to serve any legitimate penological purpose[.]" The Supreme Court denied Jordan's petition on June 28, 2018.
 
 Jordan v. Mississippi
 
 , --- U.S. ----,
 
 138 S.Ct. 2567
 
 , --- L.Ed.2d ---- (2018).
 

 DISCUSSION
 

 ¶ 13. By statute, Mississippi employs a multi-drug protocol in executions.
 
 Miss. Code Ann. § 99-19-51
 
 (1). Death by lethal injection "shall be by the sequential intravenous administration of a lethal quantity of the following combination of substances: (a)
 
 an appropriate anesthetic or sedative
 
 ; (b) a chemical paralytic agent; and (c) potassium chloride, or other similarly effective drug, until death is pronounced ...."
 

 Id.
 

 (emphasis added). " '[A]ppropriate anesthetic or sedative' means any substance that, if properly administered in a sufficient quantity, is
 
 likely to render the condemned inmate unconscious, so that the execution process should not entail a substantial risk of severe pain
 
 ."
 

 Id.
 

 (emphasis added). The current MDOC death-penalty protocol provides for the following drugs:
 
Phase Possible Drugs Intended Use/Effect 1 • Sodium Pentothal, or Render the Inmate Unconscious • Pentobarbital, or and Insensate to Pain • Midazolam 2 • Pavulon, or Paralytic • Vecuronium Bromide 3 • Potassium Chloride Cardiac Arrest

 ¶ 14. For the first phase, MDOC has been unable to obtain sodium pentothal or pentobarbital. Due to the drugs' unavailability on June 28, 2015, MDOC amended the execution protocol to include a 500-milligram dose of midazolam as the first-phase drug.
 

 ¶ 15. Jordan asserts MDOC's proposed 500-milligram dose of midazolam will not render him "unconscious, so that the execution process should not entail a substantial risk of severe pain."
 
 Miss. Code Ann. § 99-19-51
 
 (1). In support, he submits Dr. Craig Stevens's affidavits. The State, in response, maintains that a 500-milligram dose of midazolam will render an inmate completely unconscious and insensate to pain. And the State submits Dr. Richard Antognini's affidavit to support its position.
 

 ¶ 16. Although Jordan frames the issue as a state-law challenge, we find instructive the United States Supreme Court's decision in
 
 Glossip v. Gross
 
 , --- U.S. ----,
 
 135 S.Ct. 2726
 
 ,
 
 192 L.Ed.2d 761
 
 (2015). There, the Supreme Court rejected the petitioners' Eighth Amendment challenge to Oklahoma's using midazolam, in part because the petitioners failed to identify alternative and available drugs that Oklahoma could use.
 

 Id.
 

 at 2738
 
 . Moreover, the Court reaffirmed its holding in
 
 Baze v. Rees
 
 ,
 
 553 U.S. 35
 
 , 48,
 
 128 S.Ct. 1520
 
 , 1530,
 
 170 L.Ed.2d 420
 
 (2008) -that the petitioner must identify a known and available alternative method of execution which presents less risk than the method challenged.
 

 ¶ 17. The
 
 Glossip
 
 Court also denied relief on another ground, which is central to the issue presented in today's case: the Oklahoma district court did not commit clear error by finding that midazolam is "highly likely to render a person unable to feel pain during execution."
 
 Glossip
 
 , 135 S.Ct. at 2739.
 

 ¶ 18. Dr. Stevens opines that midazolam does not meet the standards set forth in Section 99-19-51(1) because it does not produce a state of general anesthesia or "maximal depression of consciousness[.]" Thus, Jordan asserts that midazolam is not "likely to render [him] unconscious, so that the execution process should not entail a
 substantial risk of severe pain."
 
 Miss. Code Ann. § 99-19-51
 
 (1).
 

 ¶ 19. Although it did not address the state-law-based challenge presented here, the Supreme Court rejected squarely the substance of Jordan's argument.
 
 See
 

 Glossip
 
 , 135 S.Ct. at 2741-42 (low doses of midazolam are sufficient to induce unconsciousness and are even sometimes used as the sole relevant drug in certain medical procedures). The Court reasoned,
 

 Petitioners emphasize that midazolam is not recommended or approved for use as the sole anesthetic during painful surgery, but there are two reasons why this is not dispositive. First, as the District Court found, the 500-milligram dose at issue here "is many times higher than a normal therapeutic dose of midazolam." The effect of a small dose of midazolam has minimal probative value about the effect of a 500-milligram dose. Second, the fact that a low dose of midazolam is not the
 
 best
 
 drug for maintaining unconsciousness during surgery says little about whether a 500-milligram dose of midazolam is
 
 constitutionally adequate
 
 for purposes of conducting an execution. We recognized this point in
 
 Baze
 
 , where we concluded that although the medical standard of care might require the use of a blood pressure cuff and an electrocardiogram during surgeries, this does not mean those procedures are required for an execution to pass Eighth Amendment scrutiny.
 

 Id.
 
 at 2742 (emphasis in original) (citation omitted).
 

 ¶ 20. Moreover, the Court also rejected the Oklahoma petitioners' argument based on midazolam's"ceiling effect."
 
 Id.
 
 at 2742-44. In sum, the petitioners argued "that midazolam has a 'ceiling' above which any increase in dosage produces no effect."
 
 Id.
 
 at 2743. The Supreme Court concluded that "the mere fact that midazolam has such a ceiling cannot be dispositive."
 
 Id.
 
 Instead, "[t]he relevant question here is whether midazolam's ceiling effect occurs below the level of a 500-mg dose and at a point at which the drug does not have the effect of rendering a person insensate to pain caused by the second and third drugs."
 
 Id.
 
 The Court found the petitioners provided little probative evidence and that the evidence they did present was speculative.
 
 Id.
 
 For example, one of the petitioners' experts conceded that he "was unable to determine the midazolam dose for a ceiling effect on unconsciousness because there is no literature in which such testing has been done."
 
 Id.
 

 ¶ 21. Here, Dr. Stevens sets forth the same assertion in his affidavit. And, like the evidence presented in
 
 Glossip
 
 , Dr. Stevens does not cite probative support for his conclusion. Instead, he relies on non-human studies and calculations that admittedly cannot be confirmed in human trials. Further, Dr. Stevens focuses his complaint about midazolam, in part, on the fact that it is an not an "anesthetic." The statute clearly calls for an "appropriate anesthetic
 
 or sedative
 
 " in phase one of the lethal-injection protocol.
 
 Miss. Code Ann. § 99-19-51
 
 (1) (emphasis added). As pointed out by Dr. Antognini, "midazolam can result in unconsciousness, coma, respiratory arrest, and death, ... especially at greater doses." The dose prescribed in MDOC's lethal-injection protocol-500-milligrams of midazolam-is about one hundred to two hundred times the normal therapeutic dose. According to Dr. Antognini, "a person given 500 mg midazolam would be rendered completely unconscious and insensate to pain and noxious stimuli." Thus, "there is only an exceedingly small risk that a person administered a 500 mg dose of midazolam would experience any pain ... as a result of ... the administration of
 drug, including vecuronium bromide and potassium chloride."
 

 ¶ 22. Finally, Mississippi's lethal-injection statute and protocol are comparable with other states' protocols.
 
 See
 

 Glossip
 
 , 135 S.Ct. at 2739-40 ("numerous courts have concluded that the use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride"). As the Fifth Circuit recognized in Jordan's § 1983 action,
 

 Mississippi's statutory requirements and the associated lethal injection protocol are not "atypical ... in relation to the ordinary" in comparison with other states' execution protocols. The three-drug protocol and the particular drugs Mississippi proposes to use (midazolam, a paralytic, and potassium chloride ) are typical for those states that use lethal injection and were recently upheld in the face of a constitutional challenge.
 

 Jordan
 
 ,
 
 823 F.3d at 811-12
 
 (quoting
 
 Glossip
 
 , 135 S.Ct. at 2735 ).
 

 CONCLUSION
 

 ¶ 23. After considering Jordan's petition and Dr. Stevens's supporting affidavits, along with
 
 Glossip
 
 , we find that Jordan has failed to set forth sufficient evidence to warrant an evidentiary hearing. Jordan has failed to provide credible evidence to support the contention that midazolam does not meet the statutory requirements in Mississippi Code Section 99-19-51(1). Therefore, Jordan's Second Successive Petition for Post-Conviction Relief is denied.
 

 ¶ 24.
 
 SECOND SUCCESSIVE PETITION FOR POST-CONVICTION RELIEF IS DENIED.
 

 RANDOLPH, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.
 

 Jordan requested a COA on issues related to ineffective assistance of counsel and prosecutorial vindictiveness.