# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 24, 2025

Lyle W. Cayce
Clerk

————————

No. 25-70013

————————

Richard Jordan,

*Plaintiff—Appellant*,

*versus*

Mississippi State Executioner, *in his Official Capacity*; Unknown Executioners, *in their Official Capacities*; Burl Cain, *Commissioner, Mississippi Department of Corrections*; Marc McClure, *Superintendent, Mississippi State Penitentiary, in his Official Capacity*,

*Defendants—Appellees*.

————————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:15-CV-295

————————————————————————

Before Stewart, Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

After numerous legal challenges, Richard Jordan now faces execution for a brutal kidnapping and murder he committed nearly 50 years ago. Four days ago, the district court denied Jordan's motion for a preliminary injunction. We affirm.

————————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-70013

I

A

In January 1976, Richard Jordan kidnapped Edwina Marter from her home in Gulfport, Mississippi, and murdered her in the woods. *Jordan v. State*, 365 So. 2d 1198, 1199–200 (Miss. 1978). Jordan stalked the Marters' family home, disguised himself as a utility worker, and tricked Mrs. Marter into letting him in the house. *Ibid.* Once inside, he kidnapped Mrs. Marter at gunpoint, leaving her sleeping toddler alone in the house. *Id.* at 1200. Jordan ordered her to drive down a remote road into DeSoto National Forest. *Ibid.* When Mrs. Marter realized that Jordan was acting alone, she "became extremely fearful" and "ran for her life." *Ibid.* In response, Jordan shot Mrs. Marter in the back of the head with his .38-caliber revolver. *Id.* at 1199–200. Then Jordan called Mrs. Marter's husband, claimed Mrs. Marter was still alive, and demanded $25,000 as ransom. *Id.* at 1200. Mr. Marter dropped the money on I–10 as instructed. *Ibid.* Two law enforcement officers saw Jordan grab the money and "gave chase at high speed." *Ibid.* Jordan was eventually apprehended and confessed to his crimes. *Ibid.*

B

Over the last 49 years, Mississippi juries have sentenced Jordan to death four times: in 1976, 1977, 1983, and 1998. *See Jordan v. Epps*, 740 F. Supp. 2d 802, 809–16 (S.D. Miss. 2010). The first trial was in 1976. *Id.* at 809. The trial judge granted Jordan a new trial after the Mississippi high court held that capital murder cases require bifurcated proceedings. *Id.* at 810. The second trial was in 1977, and the jury again convicted Jordan and sentenced him to death. *Id.* at 810–11. But this court vacated the sentence because of an improper jury instruction. *Id.* at 811 (citing *Jordan v. Watkins*, 681 F.2d 1067 (5th Cir. 1982)). The third trial was in 1983, and the jury once again sentenced Jordan to death. *Id.* at 812. But the Supreme Court vacated the sentence in

No. 25-70013

light of a then-recent case concerning the presentation of mitigation evidence. *See Jordan v. Mississippi*, 476 U.S. 1101, 1101 (1986). Jordan then struck a plea bargain, accepting a life sentence "without parole in return for his promise not to collaterally attack that sentence." *Jordan*, 740 F. Supp. 2d at 812. But the Mississippi high court later held such plea bargains unconstitutional and vacated his sentence again. *Id.* at 812–13. Finally, the fourth trial was in 1998. Yet again, the jury sentenced Jordan to death. *Id.* at 816. The Mississippi high court affirmed on appeal and denied postconviction relief. *Ibid.* So too did the Southern District of Mississippi. *Id.* at 899. And we denied a certificate of appealability. *Jordan v. Epps*, 756 F.3d 395, 413 (5th Cir. 2014) (per curiam), *cert. denied*, 576 U.S. 1071 (2015).[1]

C

On May 1, 2025, the Mississippi high court ordered Jordan's execution date for June 25, 2025. *Jordan v. State*, No. 1998-DP-00901-SCT (Miss. May 1, 2025) (en banc). Mississippi law authorizes four methods of execution—lethal injection, nitrogen hypoxia, electrocution, and firing squad—but lethal injection is "the preferred method." Miss. Code § 99-19-51(1). Mississippi uses a three-drug lethal-injection protocol, during which the prisoner is successively administered 500 milligrams of midazolam (an anesthetic), rocuronium bromide (a chemical paralytic), and potassium chloride (to stop the heart). Four minutes after the first injection, an official ensures the prisoner is unconscious and the IV line is working before

---

[1] Jordan then petitioned for state postconviction relief four more times, all of which were denied. *See Jordan v. State*, 224 So. 3d 1252, 1253 (Miss. 2017) (en banc) (second petition), *cert. denied*, 585 U.S. 1039 (2018); *Jordan v. State*, 266 So. 3d 986, 991 (Miss. 2018) (en banc) (third petition); *Jordan v. State*, 396 So. 3d 1157, 1160 (Miss. 2024) (en banc) (fourth petition), *cert. denied*, No. 24-959, 2025 WL 1727397 (U.S. June 23, 2025); *Jordan v. State*, No. 2024-DR-01272-SCT, 2025 WL 1343026, at *1 (Miss. May 1, 2025) (en banc) (fifth petition), *petition for cert. filed*, No. 24-7474 (U.S. June 20, 2025).

administering the second and third injections. Mississippi previously executed David Cox and Thomas Loden, Jr., under this protocol. The district court found that there was "no evidence that either David Cox or Thomas Loden needlessly suffered prior to death" via this "three-drug series." ROA.7795.[2]

On June 4, 2025, Jordan and other death row inmates moved for a preliminary injunction prohibiting Mississippi prison officials from executing Jordan under the three-drug protocol.[3] Suing under 42 U.S.C. § 1983, they contended the three-drug protocol violates the Eighth Amendment and the Mississippi Constitution,[4] and that the use of midazolam in particular creates an unacceptable risk that they will not be fully anesthetized during their executions. The district court held a preliminary-injunction hearing on June 14 and, in a thorough opinion, denied the motion on June 20. Jordan appealed the same day and moved in this court for an injunction pending appeal or a stay of execution this past Sunday, June 22.

## II

We affirm the denial of Jordan's motion for a preliminary injunction and deny his motion before our court. To obtain a preliminary injunction, a plaintiff must "make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

_____

[2] Prison officials admitted they "did not strictly follow the execution protocol" regarding the consciousness checks in those executions. ROA.7792. But the officials, under penalty of perjury, represented here "they will stop the execution if it appears Jordan is still conscious after two doses of midazolam and two failed consciousness checks." ROA.7795.

[3] Jordan and another death row inmate previously obtained "a sweeping preliminary injunction preventing Mississippi from using 'pentobarbital . . . or midazolam' to execute any death row inmate," but we vacated and remanded. *Jordan v. Fisher*, 823 F.3d 805, 809, 814 (5th Cir. 2016).

[4] Jordan has abandoned his claim under the Mississippi Constitution in this appeal.

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008)). We review the denial of a preliminary injunction for abuse of discretion. *See Winter*, 555 U.S. at 32. A district court "abuse[s] its discretion in making a factual finding only if the finding [was] clearly erroneous." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990).

Jordan has not made this showing. We (A) consider likelihood of success on the merits before (B) turning to the other factors.

A

As we recently explained, an Eighth Amendment challenge to the Government's method of execution requires the prisoner to "meet two requirements." *Hoffman v. Westcott*, 131 F.4th 332, 335 (5th Cir. 2025). First, he must show that the State's "method presents a risk that is '*sure or very likely* to cause serious illness and needless suffering.'" *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)). In other words, he must establish a "substantial risk of serious harm." *Ibid.* (quoting *Baze*, 553 U.S. at 50). Second, the "prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew v. Precythe,* 587 U.S. 119, 134 (2019). Prisoners "face[] an exceedingly high bar" to making these showings. *Barr v. Lee*, 591 U.S. 979, 980 (2020).

Jordan argues that Mississippi's three-drug protocol, which uses midazolam, violates the Eighth Amendment because it could cause excessive

pain.[5] And he points to a one-drug pentobarbital protocol as his preferred alternative.

We hold that Jordan cannot show that Mississippi's three-drug protocol is "sure or very likely to cause serious illness and needless suffering." *Glossip*, 576 U.S. at 877 (quotation omitted). That is for three reasons.

*First*, the record in this case is substantially similar to the one in *Glossip*. The prisoners in *Glossip* challenged the same three-drug protocol at issue here. *See* 576 U.S. at 873. That challenge also focused on "the administration of 500 milligrams of midazolam." *Ibid.* Moreover, Mississippi has adopted "safeguards" like the ones in Oklahoma that *Glossip* blessed, such as monitoring the prisoner's consciousness. *Id.* at 886. True, both sides submitted expert testimony regarding the three-drug cocktail, and those dueling experts differed in some respects from the evidence introduced in *Glossip*. But the district court carefully considered the parties' competing claims, including the parties' expert reports, and it concluded that the prisoners "failed to establish that [the State's] use of a massive dose of midazolam in its execution protocol entails a substantial risk of severe pain." *Id.* at 867. So we see no reason to depart from *Glossip*.

*Second*, the district court did not clearly err in finding that using midazolam would not result in severe pain. *See ibid.* (reviewing for clear error the district court's finding that midazolam does not create a substantial risk of serious harm). The court found that Jordan offered no evidence that the two prisoners recently executed under this protocol suffered any pain. And

_____

[5] On appeal, Jordan does not argue that Mississippi's three-drug protocol violates the Eighth Amendment's "evolving standards of decency." ROA.7797. Thus, he has abandoned this argument.

though it found that both parties offered credible expert testimony about whether 500 milligrams of midazolam would render Jordan fully unconscious, the court ultimately concluded that Jordan failed to meet his burden to show that using midazolam would result in a substantial risk of severe pain. That finding, which is entitled to deference, tracks how other courts have handled "equivocal evidence" in similar circumstances. *McGehee v. Hutchinson*, 854 F.3d 488, 493 (8th Cir. 2017) (en banc) (per curiam) (holding that a prisoner failed to show that the use of midazolam will result in a substantial risk of serious harm because the evidence was "equivocal"); *see also Barr*, 591 U.S. at 981 (holding that the prisoners failed to make "the showing required to justify last-minute intervention by a Federal Court" because "the Government has produced competing expert testimony of its own"). That is for good reason: "[T]he Constitution affords a 'measure of deference to a State's choice of execution procedures' and does not authorize courts to serve as 'boards of inquiry charged with determining "best practices" for executions.'" *Bucklew*, 587 U.S. at 134 (quoting *Baze*, 553 U.S. at 51–52 & nn.2–3).

*Third*, even if Jordan established that midazolam would not render him insensate, his claim would still fail. The defendants represented that they will stop the execution if it appears Jordan is still conscious after administering midazolam twice. The district court credited those statements. *Cf. DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) ("[It has] been the settled practice of the Court . . . fully to accept representations such as these as parameters for decision."). So if Jordan remains conscious despite midazolam injections, he is not likely to suffer any pain because the defendants will halt the execution. And if Jordan does fall unconscious, he will likely experience a painless death.

No. 25-70013

Thus, the district court correctly concluded that Jordan failed to show that using midazolam in the three-drug protocol will create a substantial risk of severe pain, so he has not established likelihood of success on the merits.

B

Although we need not proceed any further, the balance of the equities and the public interest also weigh in Mississippi's favor. *See Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 254 (5th Cir. 2024) (noting these factors "merge when the government opposes an injunction"). "[A] stay of execution is an equitable remedy," and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Jordan has enjoyed repeated review of his claims in the Mississippi courts, the district court, this court, and the Supreme Court—for nearly 50 years. At this point, "finality acquires an added moral dimension. Only with an assurance of real finality can the State execute its moral judgment in a case. Only with real finality can the victims of crime move forward knowing the moral judgment will be carried out." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). Accordingly, "the public's interest in timely enforcement of the death sentence outweighs [Jordan's] request for more time." *Johnson v. Collier*, 137 F.4th 376, 384 (5th Cir. 2025).

*        *        *

The Supreme Court has cautioned that "[l]ast-minute stays should be the extreme exception." *Bucklew*, 587 U.S. at 150. And it "has yet to hold that a State's method of execution qualifies as cruel and unusual." *Id.* at 133. We do not think Jordan's challenge should be the first. Accordingly, we AFFIRM the district court's denial of Jordan's motion for a preliminary injunction, and we DENY his motions for an injunction pending appeal and for a stay of execution.

8