# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 14, 2020
Lyle W. Cayce
Clerk

No. 20-70004

Carl Wayne Buntion,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2683

Before Costa, Duncan, and Oldham, *Circuit Judges*.

Per Curiam:*

Carl Buntion shot a police officer in the forehead and killed him. The State of Texas prosecuted Buntion for capital murder. A jury convicted him. He was sentenced to death. After a state habeas court vacated Buntion's sentence and remanded for a new punishment hearing, Buntion was

---

* Judge Costa concurs in the denial of a COA. Because a COA should not issue due to the state procedural bars and failure to exhaust discussed in the opinion, he would not address the merits of the claims.

No. 20-70004

sentenced to death a second time. He unsuccessfully applied for postconviction relief in state and federal court. The federal district court denied him a certificate of appealability ("COA"). We likewise deny a COA.

## I.

## A.

Houston Police Officer James Irby made his final traffic stop on June 27, 1990. *Buntion v. Quarterman*, 524 F.3d 664, 666–67 (5th Cir. 2008). Buntion, the lone passenger, exited the vehicle while Officer Irby spoke to the driver. *Id.* at 667. Officer Irby motioned for Buntion to return to the car, but he refused. *Id.* Buntion continued toward Officer Irby until he was within five feet of him. *Id.* Then, without provocation, Buntion raised a long-barrel revolver with both hands and shot Officer Irby in the forehead. *Id.* Officer Irby fell to the pavement, and Buntion shot him in the back twice more. *Buntion v. State*, 482 S.W.3d 58, 66 (Tex. Crim. App. 2016). Officer Irby died almost instantly. *Buntion*, 524 F.3d at 667.

Buntion then fled on foot. *Buntion*, 482 S.W.3d at 66. He attempted to steal a car by shooting at the driver through the windshield. *Id.* When that effort failed, he walked into a nearby warehouse and pointed his gun at an employee. *Id.* Then he trained his gun on the employee's supervisor and directed him to raise his hands, surrender his wallet, and get on the ground. *Id.* Then he tried to steal the supervisor's vehicle. *Id.* Finally, a responding officer arrested him. *Id.* at 67.

Buntion was indicted for capital murder of a peace officer the next day. *Buntion*, 524 F.3d at 667. The jury convicted him and recommended a death sentence. *Id.* at 668. The trial court imposed it. *Id.*

No. 20-70004

## B.

After failing to obtain relief on direct appeal and in state and federal habeas proceedings, Buntion filed another state habeas application in 2009. This time, the Texas Court of Criminal Appeals ("CCA") granted the application. *Ex parte Buntion*, No. AP-76236, 2009 WL 3154909 (Tex. Crim. App. Sept. 30, 2009) (per curiam). The CCA found that, under *Penry v. Johnson*, 532 U.S. 782 (2001), the jury instructions at Buntion's trial provided an unconstitutionally ineffective vehicle for the jury to consider his mitigation evidence during the sentencing phase. *Id.* at *2. So the CCA remanded the case for the trial court to conduct a new punishment hearing. *Id.*

The trial court did so in February 2012. Consistent with Texas law, one of the special issues submitted to the jury was "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." TEX. CODE CRIM. PROC. art. 37.0711, § 3(b)(2). The State urged the jury to answer that question affirmatively and recommend a death sentence. It pointed to Buntion's thirteen prior felony convictions, his comments one week before the shooting that he "would rather kill than go back to prison," the fact that he killed Officer Irby one month into his parole for sexual assault of a child, and a letter to his brother explaining he was glad he would never be released from prison because he would "hate to think about what [he would] do to certain people that have screwed [him] around." *Buntion*, 482 S.W.3d at 67. Buntion countered with testimony from his brother about his abusive upbringing, evidence of his good behavior and religiosity while in prison, and expert testimony challenging his propensity for violence. The jury sided with the State and recommended a death sentence for the second time. The trial court reimposed it.

3

No. 20-70004

The CCA affirmed Buntion's conviction and sentence on direct appeal. While his appeal was pending, Buntion filed a state habeas application raising twelve claims. The state habeas court denied all of them—some on the merits and some for Buntion's failure to raise them on direct appeal. *Ex parte Buntion*, No. WR-22548-04, 2017 WL 2464716 (Tex. Crim. App. June 7, 2017) (per curiam). Buntion then filed a federal habeas petition raising seven claims. The district court denied those too. The district court further denied a COA.

Buntion timely applied for a COA from this court.

II.

A state prisoner seeking appellate review of a habeas petition "denied by a federal district court" must "first obtain a COA from a circuit justice or judge." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *see* 28 U.S.C. § 2253(c)(1)(A). Because a "COA is jurisdictional[,] 'a Court of Appeals may not rule on the merits of the prisoner's case' until a COA has issued." *United States v. Davis*, 971 F.3d 524, 529 (5th Cir. 2020) (quoting *Buck*, 137 S. Ct. at 773) (alterations omitted). And a COA may only issue if the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

To make that showing, a COA applicant must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (quotation omitted). When a district court denies a COA because of procedural default in state court, the COA applicant must further demonstrate that reasonable jurists could disagree with the procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Our review is "not a full consideration of the factual or legal bases adduced in support of the

4

[applicant's] claims" but rather an examination of whether "the District Court's decision was debatable." *Davis*, 971 F.3d at 530 (quotations omitted).

Buntion raises three claims that he says demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). We review and reject each claim in turn. *See Davis*, 971 F.3d at 530.

A.

First, Buntion claims his sentence violates the Eighth and Fourteenth Amendments because it was based on the jury's unreliable and inaccurate predictions about his future dangerousness. Buntion objects to the portion of Texas's death penalty statute that requires jurors to consider the "probability" that a capital defendant "would constitute a continuing threat to society." TEX. CODE CRIM. PROC. art. 37.0711, § 3(b)(2). He contends the provision is unconstitutional because several studies indicate that juries' dangerousness predictions usually prove untrue. And he cites his post-conviction behavior as evidence that the jury got it wrong in his case too. Without passing on the accuracy of Buntion's statistical claims, we reject his argument as both procedurally defaulted and substantively meritless.

1.

Start with procedural default. "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). A state rule is adequate if it "ha[s] been firmly established and regularly followed" by the time of the relevant state court decision. *Roberts v. Thaler*, 681 F.3d 597, 604–05 (5th Cir. 2012) (quotation omitted). A state rule is independent if the state court decision "clearly and expressly" relies on it to deny relief or if the decision "does not fairly appear to rest primarily on . . . or to be interwoven

with [federal] law." *Coleman v. Thompson*, 501 U.S. 722, 736, 740 (1991) (quotation omitted). State prisoners who fail to comply with an adequate and independent state procedural rule cannot obtain federal habeas relief "absent a showing of cause and prejudice." *Id.* at 747.

Here, the CCA held that Buntion defaulted his future dangerousness claim by inadequately briefing it on direct appeal. *See Buntion*, 482 S.W.3d at 106; TEX. R. APP. P. 38.1(i). It is uncontested that Texas's briefing rules are "adequate." *See Roberts*, 681 F.3d at 607 (holding that Rule 38.1(i) "constitutes a valid procedural bar to federal habeas relief," even "in the capital context"). Buntion argues only that the CCA's procedural ruling was not "independent" because it was only "one of two reasons" why the CCA rejected his claim, the second of which involved the merits.

That argument fails. "By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). So "a state court need not fear reaching the merits of a federal claim in an alternative holding." *Id.* (emphasis omitted). There can be no doubt that the CCA relied on Texas's briefing rule to reach an "independent," "sufficient," and "alternative" holding. As it explained:

> Appellant has not provided a citation to the record showing where he presented his [future dangerousness] claim to the trial court. Therefore his claim is inadequately briefed. *See* TEX. R. APP. P. 38.1(i). Further, this Court has rejected similar claims. *See Fuller*, 253 S.W.3d at 233; *Martinez*, 327 S.W.3d at 740. Point of error twenty-six is overruled.

*Buntion*, 482 S.W.3d at 106 (footnote omitted). That the CCA signaled its transition from a procedural holding to a merits holding with "further" instead of "in the alternative" is of no moment. *See Coleman*, 501 U.S. at 739–

40 ("[W]e will not impose on state courts the responsibility for using particular language . . . . where the relevant state court decision does not fairly appear to rest primarily on federal law or to be interwoven with such law . . . ."); *Michigan v. Long*, 463 U.S. 1032, 1038 n.4 (1983) (explaining that a state ground is "interwoven" with a federal ground only where state and federal law are so intertwined that the state ground is "not . . . an independent matter, or is not of sufficient breadth to sustain the judgment" (quotation omitted)).

Because Buntion failed to brief his future dangerousness claim in compliance with an adequate and independent state procedural rule, that claim is defaulted.

2.

But even if it weren't, Buntion's claim fails on the merits. As he must, Buntion concedes that the Supreme Court has twice upheld the exact same provision of the death penalty statute he now challenges. *See Barefoot v. Estelle*, 463 U.S. 880, 883–84, 899, 905–06 (1983); *Jurek v. Texas*, 428 U.S. 262, 269, 274–76 (1976). And the Supreme Court has repeatedly rejected Buntion's theory that future dangerousness predictions are unconstitutionally unreliable. *See, e.g.*, *Simmons v. South Carolina*, 512 U.S. 154, 162 (1994) ("This Court has approved the jury's consideration of future dangerousness during the penalty phase of a capital trial . . . ."); *Barefoot*, 463 U.S. at 899 ("We are not persuaded that [future dangerousness] testimony is almost entirely unreliable and that the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings."); *Jurek*, 428 U.S. at 274–76 (rejecting petitioner's argument that "it is impossible to predict future behavior and that the question is so vague as to be meaningless"). No reasonable jurist could conclude that

Buntion has been denied a constitutional right when the Supreme Court has expressly and repeatedly said that right does not exist.

Buntion disagrees. He says that *Barefoot* and *Jurek* were based on "first generation" evidence that has since been proven false. And because he thinks the new evidence "entirely undermine[s] the factual predicate" underlying those cases, he invites us to ignore them. We cannot. "[I]t is th[e] [Supreme] Court's prerogative alone to overrule one of its precedents." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). That remains true even when litigants—or courts, for that matter—identify "infirmities" so severe as to leave a Supreme Court case standing on "wobbly, moth-eaten foundations." *Id.* (quotation omitted). We doubt that Buntion's statistical evidence leaves *Barefoot* and *Jurek* in such a state. After all, the Court based its holdings on more than just statistics. *See Barefoot*, 463 U.S. at 896–901 (upholding death sentence where the jury could weigh future dangerousness testimony with "the benefit of cross examination and contrary evidence," and noting the central role of behavioral predictions in the criminal justice system); *Jurek*, 428 U.S. at 275–76 (same). But even if a statistical debate is to be had, our court is not the place to have it.

Buntion also claims that *Barefoot* and *Jurek* do not foreclose relief because his behavior in prison disproves the jury's dangerousness prediction as a matter of fact. That matters, he says, because *Johnson v. Mississippi*, 486 U.S. 578 (1988), stands for the proposition that any sentence based on a factual inaccuracy must be vacated. There are at least two problems with Buntion's argument.

First, that is not what *Johnson* says. In fact, "[t]he Supreme Court has *never* intimated that the factual correctness of the jury's prediction on the issue of future dangerousness . . . bears upon the constitutionality" of a death sentence. *Lincecum v. Collins*, 958 F.2d 1271, 1281 (5th Cir. 1992) (emphasis

8

added); *accord Bible v. Stephens*, 640 F. App'x 350, 355 (5th Cir. 2016) (per curiam). The Court contemplated in cases like *Barefoot* that dangerousness evidence might be wrong "most of the time." 463 U.S. at 901. Yet it still did not create a remedy for defendants whose death sentences turned on that evidence.

Second, Buntion's sentence does not rest on a factual inaccuracy. As the Government correctly observes, Buntion's contention to the contrary "misunderstands the question posed to the jury." The jury was not asked to find that Buntion would in fact engage in future violence. Rather, the jury was asked to "find from the evidence . . . [that] there is a *probability* that . . . Buntion . . . would commit criminal acts of violence." Tex. Code Crim. Proc. art. 37.0711, § 3(b)(2) (emphasis added). Buntion does not challenge the sufficiency of the evidence supporting the jury's probabilistic assessment. *Cf. Johnson*, 486 U.S. at 585 n.6 ("[I]t is clear on the record before us that petitioner's death sentence is now predicated . . . on a . . . judgment that is not valid now, and was not valid when it was entered . . . ."). And the fact that Buntion has behaved peacefully while in prison does not disprove the jury's probability calculation.

B.

Next, Buntion argues his sentence violates the Due Process Clause because the delay between his initial, unconstitutional sentencing hearing and his resentencing hearing interfered with his ability to present mitigating evidence. As with his future dangerousness claim, we reject this claim as procedurally defaulted and substantively meritless.

1.

Texas courts have long held that "the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal." *Ex parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004) (en

banc) (quotation omitted). So when Buntion failed to raise his due process claim on direct review, the state habeas court refused to consider it later. *See Ex parte Buntion*, 2017 WL 2464716, at *1. Supreme Court and Fifth Circuit cases squarely hold that the state habeas court's procedural ruling satisfies the requirements for procedural default. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006) ("The general rule . . . that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review . . . . constitute[s] an adequate and independent state-law ground preventing us from reviewing the federal claim."); *Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007) (holding Texas's direct appeal requirement "sets forth an adequate state ground capable of barring federal habeas review").

Buntion does not dispute the adequacy or independence of Texas's rule. Instead, he argues the state court misapplied the rule by invoking it to bar a claim based on extra-record evidence. *See Dorsey*, 494 F.3d at 532 (indicating Texas's direct appeal bar applies to "record[-]based claims"). But "a basic tenet of federal habeas review is that a federal court does not have license to question a state court's finding of procedural default [that is] based upon an adequate and independent state ground." *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000) (per curiam) (quotation omitted); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). That is why we upheld the state court's procedural default ruling in *Smith* without resolving Smith's contention that the ruling rested on a mischaracterization of his habeas application under state law. *See* 216 F.3d at 523. And it is why we uphold the state court's procedural determination in this case too.

No. 20-70004

2.

Buntion's due process claim also fails on the merits. With a citation to nothing but the Due Process Clause itself, he asserts that states cannot impose a death sentence where a "constitutional error at a defendant's original trial" combines with the "significant passage of time" to limit the availability of mitigating evidence at a subsequent sentencing hearing. Like Buntion, we cannot identify a single case that interprets the Due Process Clause that way. The Supreme Court certainly hasn't done so. *See Reed v. Quarterman*, 504 F.3d 465, 485 (5th Cir. 2007) (denying COA application predicated on the applicant's "lost . . . opportunity to investigate aspects of the case while memories were fresh" because "there is no Supreme Court decision holding that excessive [appellate] delay . . . is a violation of the Due Process Clause" (quotation omitted)); *State ex rel. Watkins v. Creuzot*, 352 S.W.3d 493, 500 (Tex. Crim. App. 2011) ("[T]he United States Supreme Court has not recognized a due-process claim that would preclude a retrial (or preclude the availability of a particular punishment) after a lengthy delay on appeal."). And while several circuits have held that "excessive appellate delay may violate the Due Process Clause," *Reed*, 504 F.3d at 486, that is not Buntion's theory. Rather, he points to the ten-year gap between his initial sentence and the Supreme Court's *Penry* decision, followed by an eight-year gap between *Penry* and the state habeas application that led to Buntion's resentencing.

The absence of a due process violation seems particularly clear where, as here, the passage of time actually *helps* a defendant. Buntion provides no specifics about the "significant areas of mitigation . . . evidence" he claims disappeared between his first and second sentencing proceedings. But there are plenty of details about the mitigation evidence he invoked in round two that did not exist in round one. Indeed, testimony from seven defense witnesses comprising nearly 300 pages of the record focused on evidence that

postdated Buntion's 1991 conviction. Therefore, Buntion's factual claims about "significant[] interfere[nce] with his ability to obtain and present mitigating evidence" fall flat. So do his legal claims about due process. Taking the facts and the law as they actually are, reasonable jurists could not debate the district court's ruling.[†]

## C.

Finally, Buntion claims the Eighth Amendment prohibits his execution because of how much time he has spent on death row. But Buntion did not raise that argument in state court, so the claim is unexhausted and unreviewable in federal habeas. *See* 28 U.S.C. § 2254(b); *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). And in any event, the claim is undebatably meritless. We, like Justice Thomas, are "unaware of any support in the American constitutional tradition or in th[e] [Supreme] Court's precedent for the proposition that a defendant can avail himself of the panoply of appellate and collateral procedures and then complain when his execution is delayed." *Knight v. Florida*, 120 S. Ct. 459, 459 (1999) (mem.) (Thomas, J., concurring in the denial of certiorari). Buntion's observation that "[r]easonable jurists[] such as Justices Breyer and Ginsburg" have signaled a willingness to entertain similar claims does not change that.

Buntion's application for a COA is DENIED.

---

[†] Buntion faults the district court for declining to grant him an evidentiary hearing on his due process claim, and he seeks a separate COA on that issue. But "we have no power to issue such COAs." *Davis*, 971 F.3d at 534. Instead, "a request for an evidentiary hearing stands or falls with the applicant's COA showing" on the constitutional merits. *Id.*; *see* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a *constitutional* right." (emphasis added)). Because Buntion's due process theory lacks merit, his request for an evidentiary hearing fails too.