# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 20, 2022

Lyle W. Cayce
Clerk

No. 22-70003

CARL WAYNE BUNTION,

*Petitioner—Appellant*,

*versus*

BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

*Respondent—Appellee*,

CONSOLIDATED WITH

No. 22-70004

CARL WAYNE BUNTION,

*Plaintiff—Appellant*,

*versus*

BRYAN COLLIER, BOBBY LUMPKIN, DENNIS CROWLEY,

*Defendants—Appellees*.

No. 22-70003
c/w No. 22-70004

---

Application for Certificate of Appealability and Appeal
from the United States District Court
for the Southern District of Texas
USDC Nos. 4:22-cv-1104 & 4:22-cv-1125

---

Before COSTA, DUNCAN, and OLDHAM, *Circuit Judges*.

PER CURIAM:*

Carl Buntion killed a police officer. The State of Texas prosecuted him for capital murder, and a jury convicted him. He has been sentenced to death twice. He has unsuccessfully applied for postconviction relief in state and federal court, several times each. Most recently, a federal district court denied him a certificate of appealability ("COA"), dismissed his related 42 U.S.C. § 1983 suit, and refused to stay his execution. We consolidated Buntion's last-minute proceedings before our court. We now deny a COA, affirm the district court's § 1983 dismissal, and affirm the district court's denial of a stay.

I.

A.

Our court has narrated the following facts twice before. *See Buntion v. Quarterman (Buntion I)*, 524 F.3d 664, 666–69 (5th Cir. 2008); *Buntion v. Lumpkin (Buntion II)*, 982 F.3d 945, 947 (5th Cir. 2020) (per curiam). On June 27, 1990, Houston Police Officer James Irby pulled over a car in which Buntion was a passenger. *Id.* Buntion first ignored Officer Irby's orders. *Id.* Then Buntion shot him in the head without provocation. *Id.* After Officer

---

* Judge Costa concurs in the judgment only.

No. 22-70003
c/w No. 22-70004

Irby fell to the ground, Buntion shot him two more times. *Id.* "Officer Irby died almost instantly." *Id.*

Buntion fled. He tried to steal a car by shooting at the driver. *Id.* That did not work, so he "walked into a nearby warehouse and pointed his gun" at two different employees. *See id.* After he tried to steal one of their vehicles, a police officer arrested him. *See id.*

A Texas jury convicted Buntion of capital murder in 1991, and that same jury recommended a sentence of death. *See id.*; *Buntion I*, 524 F.3d at 668. The trial court imposed that sentence.

B.

1.

Buntion tried and failed to obtain relief on direct appeal. *See Buntion I*, 524 F.3d at 668–69 (describing those attempts). He tried and failed to obtain relief in state habeas proceedings. *See id.* (describing those attempts). Then he tried to obtain relief in federal habeas proceedings. That attempt was unsuccessful as well. *See id.* at 676 (denying federal habeas relief), *cert. denied*, 555 U.S. 1176 (2009).

Buntion petitioned for state habeas relief once more. "This time, the Texas Court of Criminal Appeals ('CCA') granted the application." *Buntion II*, 982 F.3d at 947 (citing *Ex parte Buntion*, No. AP-76236, 2009 WL 3154909 (Tex. Crim. App. Sept. 30, 2009) (per curiam)). After concluding that the jury instructions at Buntion's first trial were inadequate—on the ground that they unjustifiably downplayed his mitigating evidence at the sentencing stage—the CCA remanded for a new punishment hearing. *See Ex parte Buntion*, 2009 WL 3154909, at *2.

After that hearing, another jury concluded that Buntion should be sentenced to death. *See Buntion v. State*, 482 S.W.3d 58, 66 (Tex. Crim. App.

3

2016) (appeal from that determination); *see also Buntion II*, 982 F.3d at 947–48 (summing up some of the cardinal issues at play in the second hearing). The CCA, Texas's highest court for criminal cases, affirmed that conviction and sentence. *See Buntion v. State*, 482 S.W.3d at 106 (on direct review). And the Supreme Court once again denied certiorari. *Buntion v. Texas*, 136 S. Ct. 2521 (2016). Buntion then raised various claims in another state habeas petition, and "[t]he state habeas court denied all of them—some on the merits and some for Buntion's failure to raise them on direct appeal." *Buntion II*, 982 F.3d at 948.

Buntion filed another federal habeas petition. He raised seven claims in district court, but the district court denied relief. *See Buntion II*, 982 F.3d at 948. Buntion sought a COA, *see* 28 U.S.C. § 2253(c), but the district court denied that too. *See Buntion II*, 982 F.3d at 948.

Then, in the case we've been referring to as *Buntion II*, Buntion sought a COA from our court based on three of his seven claims. 982 F.3d at 948. We "review[ed] and reject[ed] each claim in turn." *Id.* Buntion's first claim was an Eighth- and Fourteenth-Amendment challenge, based on the contention that his sentence was unconstitutionally "based on the jury's unreliable and inaccurate predictions about his future dangerousness." *Id.* We refused a COA on that claim on the ground that it was procedurally defaulted and, in the alternative, meritless. *Id.* at 949–51. Buntion next argued that the delay between his initial sentencing hearing and his second sentencing hearing "violate[d] the Due Process Clause." *Id.* at 951. We likewise refused a COA on that argument, on the grounds that it was defaulted and meritless. *Id.* Third and finally, Buntion argued that the Constitution prohibited his execution "because of how much time he has spent on death row." *Id.* at 952; *see also Lackey v. Texas*, 514 U.S. 1045 (1995) (memorandum of Stevens, J., respecting the denial of certiorari). We refused a COA on that argument on the ground that it was unexhausted. And we held

in the alternative that it was, likewise, "undebatably meritless." *Buntion II*, 982 F.3d at 952. Accordingly, we denied Buntion's COA application. *See id.* at 953. And the Supreme Court then denied certiorari for a third time. *See Buntion v. Lumpkin*, 142 S. Ct. 3 (2021) (mem.).

2.

On January 4, 2022, Texas scheduled Buntion's execution for April 21, 2022. Buntion subsequently filed another habeas petition in state court. *See Ex parte Buntion*, No. WR-22,548-05, 2022 WL 946264, at *1 (Tex. Crim. App. Mar. 30, 2022) (describing the petition). That petition raised two claims that we rejected in *Buntion II*—namely, the *Lackey* claim and the future-dangerousness claim. *Id.* His third claim was that "[t]he evolving standards of decency that mark the progress of a maturing society under the Eighth and Fourteenth Amendments prohibit executions as a punishment for murder." *Id.* (quotation omitted).

Pursuant to Texas Code of Criminal Procedure article 11.071, § 5, the CCA "dismiss[ed] [Buntion's] subsequent application as an abuse of the writ without considering the claims' merits." *Id.*; *see also* Tex. Code Crim. Proc. art. 11.071, § 5(a) (providing that "[i]f a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that . . ." and going on to explain the relevant showings).

On April 6, 2022, Buntion filed another federal habeas petition. That is the petition at issue in this case. Under 28 U.S.C. § 2244, "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."

§ 2244(b)(3)(A). Rather than filing such a motion, Buntion simply filed his habeas petition in the district court.

The district court held that § 2244(b) bars Buntion's petition. The district court reasoned that, because this is a successive federal habeas petition, § 2244(b) applies. And both of the arguments raised in the petition (namely, the future-dangerousness claim and *Lackey* claim) were raised in a prior habeas petition and hence are barred. *See* § 2244(b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."). It rejected Buntion's arguments to the contrary and dismissed his petition for lack of jurisdiction. *See Williams v. Thaler*, 602 F.3d 291, 301 (5th Cir. 2010) ("A petitioner's failure to seek authorization from an appellate court before filing a second or successive habeas petition acts as a jurisdictional bar." (quotation omitted)). In the same order, the district court denied Buntion's motion for a COA. Buntion timely applied for a COA in this court.

3.

On April 7, 2022, Buntion sued various Texas officials in their official capacities in federal district court. *See* 42 U.S.C. § 1983. His complaint included one claim: the *Lackey* claim. One week later, on April 14, Buntion moved the district court for a stay of his execution based on that claim.

The district court denied the stay. It applied the Supreme Court's four-factor test for emergency equitable relief, *see Nken v. Holder*, 556 U.S. 418 (2009), and held that Buntion failed to make the requisite showing. Specifically, it held Buntion had not made a strong showing of likely success on the merits, that a stay would substantially injure the other party in this case (Texas), and that the public interest did not favor a stay. It concluded that, even though Buntion's impending execution amounted to irreparable injury, a stay was not warranted. The court also noted the last-minute nature

of Buntion's suit and suggested Buntion should have sued earlier. In the same order, the district court also dismissed Buntion's complaint with prejudice. *See* 28 U.S.C. § 1915A (directing district courts to review "before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to dismiss the complaint if it "fails to state a claim upon which relief may be granted").

Buntion appealed the district court's dismissal and its refusal to stay the execution. We consolidated Buntion's various filings and consider all of them in this opinion. We construe Buntion to request three things: a stay of execution, *see* Fed. R. App. P. 8, a COA, and injunctive relief under § 1983. We address each in turn.

II.

"[A] stay of execution is an equitable remedy . . . not available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). A "court considering a stay must also apply a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id.* (quotation omitted).

Accordingly, when a prisoner seeks a stay of execution, we apply the four-factor test the Supreme Court announced in *Nken v. Holder*, 556 U.S. 418 (2009). The factors are: (1) whether Buntion has made a strong showing of likely success on the merits, (2) whether Buntion will be irreparably injured in the absence of a stay, (3) whether a stay would injure other interested parties, and (4) where the public interest lies. *See id.* at 426. "[L]ike other stay applicants," Buntion "must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *See Hill*, 547 U.S. at 584. We hold that Buntion is unlikely to prevail on his

No. 22-70003
c/w No. 22-70004

request for a COA, *see infra*, Part III, and he is unlikely to succeed on his § 1983 claim, *see infra*, Part IV. It follows that Buntion cannot satisfy the first *Nken* factor. *See* 445 U.S. at 426. We will therefore deny a stay.

### III.

We now turn to habeas. We (A) begin with the rules governing COAs. Then we (B) reject Buntion's request for a COA on his future-dangerousness claim, and we (C) reject Buntion's request for a COA on his *Lackey* claim.

### A.

"A state prisoner seeking appellate review of a habeas petition 'denied by a federal district court' must 'first obtain a COA from a circuit justice or judge.'" *Buntion II*, 982 F.3d at 948 (quoting *Buck v. Davis*, 137 S. Ct. 759, 773 (2017)). The existence of a COA is a jurisdictional prerequisite to an appeal. *See Gonzalez v. Thaler*, 565 U.S. 134, 137, 142 (2012) (discussing 28 U.S.C. § 2253(c)(1)).

An applicant for a COA must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In cases where the district court denies a COA on purely constitutional grounds, the applicant must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (quotation omitted); *accord Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (quotation omitted)). When the district court denies a COA on procedural grounds, the applicant must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, "[a]t the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. This threshold question should be decided without full consideration of the factual or legal bases adduced in support of the claims." *Buck*, 137 S. Ct. at 773 (quotation omitted) (going on to explain that a court may not first decide the merits and only then "justif[y] its denial of a COA based on its adjudication of the actual merits" (quotation omitted)). In a capital case, "any doubt as to whether a COA should issue in a death-penalty case must be resolved in favor of the petitioner." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).

## B.

Buntion argues his death sentence violates the Eighth and Fourteenth Amendments because it was based in part on the jury's finding of a "probability that [Buntion] would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. art. 37.0711, § 3(b)(2). Buntion points out that he has been peaceful in prison since his sentence. And it follows, in his view, that the jury's prediction has proven false. It further follows, Buntion contends, that his execution would be unconstitutionally arbitrary.

We (1) explain that "jurists of reason would [not] find it debatable whether" § 2244(b)(1) bars this claim. *Slack*, 529 U.S. at 484. Thus, we hold § 2244(b)(1) is a sufficient ground for refusing a COA on this claim. Then, (2), we explain it's equally undebatable that this claim is procedurally

defaulted. *See id.* Thus, we hold procedural default is a sufficient ground for refusing a COA on this claim. Finally, (3), we explain that "jurists of reason would [not] find it debatable whether" Buntion's future-dangerousness argument "states a valid claim of the denial of a constitutional right." *Id.* Thus, we hold substantive meritlessness is an independent ground for refusing a COA on Buntion's future-dangerousness claim.

1.

In his last federal habeas petition, Buntion challenged the Texas statute that requires juries to make predictions about a defendant's future dangerousness. He argued the relevant statutory provision was "unconstitutional because several studies indicate that juries' dangerousness predictions usually prove untrue." *Buntion II*, 982 F.3d at 948–49. He *also* raised a case-specific challenge, contending that "his [non-violent] post-conviction behavior [was] evidence that the jury got it wrong in his case too." *Id.* at 949. The district court rejected both versions of that claim and denied a COA on it. *See Buntion v. Davis*, No. 4:17-CV-02683, 34–36 (S.D. Tex. Mar. 5, 2020) (denying this claim as meritless). In turn, we denied a COA on that claim because it was "both procedurally defaulted and substantively meritless." *Buntion II*, 982 F.3d at 949–51.[1]

Buntion now makes that same case-specific challenge. He argues that time has proved the jury's future-dangerousness prediction false. That means Buntion's challenge to the accuracy of the jury's future-dangerous

---

[1] Buntion suggests that his previous petition challenged only the constitutionality of the relevant Texas statute and did not challenge his individualized future-dangerousness finding. But Buntion clearly made both arguments in his first habeas petition. *See* Petition for Writ of Habeas Corpus for Carl Wayne Buntion at 101–02, *Buntion v. Davis*, No. 4:17-CV-02683 (S.D. Tex. Mar. 5, 2020) (arguing the jury's prediction was inaccurate in his case); *see also Buntion II*, 982 F.3d at 950–51 (addressing both arguments).

prediction is "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application." § 2244(b)(1). So the claim "shall be dismissed." *Id.*; *see also In re Sharp*, 969 F.3d 527, 529 (5th Cir. 2020) (per curiam) ("Any attempt to [raise a previously raised claim in a successive petition] is strictly barred by § 2244(b)(1), which admits of no exceptions."); *Williams*, 602 F.3d at 301 (explaining this is a jurisdictional bar).

Buntion nonetheless contends that § 2244(b)(1) does not apply because his future-dangerousness claim was not ripe when he filed his first habeas petition. He relies principally on *Ford v. Wainwright*, 477 U.S. 399 (1986). In *Ford*, the Court held it cruel and unusual to execute an insane prisoner. *Id.* at 409–10 ("[T]he Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane."). Because the *Ford* inquiry focuses on the petitioner's sanity at the time of execution, some *Ford* claims are by necessity unripe at the time of a first petition—but may have become ripe by the time of a later one. *See Panetti v. Quarterman*, 551 U.S. 930, 934 (2007) ("The State acknowledges that *Ford*-based incompetency claims, as a general matter, are not ripe until after the time has run to file a first federal habeas petition."). In *Panetti*, the Court held that "a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe," even if that petition was "filed second or successively in time." *Id.* at 945, 944.

Buntion says his future-dangerousness claim fits within that exception. Pointing to the interval between his last habeas filing and this one, he argues his claim wasn't ripe until after the State set his execution date. That is so, Buntion contends, because his claim hinges not on the facts as they stood at the time the jury sentenced him to death, but rather on the fact that he has *subsequently* been a non-violent prisoner. So in his view, this claim

is just like a *Ford* claim, and we should hold this petition satisfies the *Panetti* exception to the ordinary second-or-successive rule.

We disagree and hold "jurists of reason would [not] find it debatable whether" § 2244(b)(1) deprived the district court of jurisdiction over this claim. *Slack*, 529 U.S. at 484. That is for two independent reasons.

First, reasonable jurists could not debate that *Panetti* applies only to *Ford* claims. *See id.* The *Panetti* Court's holding was: "The statutory bar on 'second or successive' applications does not apply to a *Ford* claim brought in an application filed when the claim is first ripe." *Panetti*, 551 U.S. at 947. Buntion of course does not raise a *Ford* claim. And neither the Supreme Court nor the Fifth Circuit has ever extended *Panetti* to cover non-*Ford* claims.

Second, even if *Panetti could* encompass *some* non-*Ford* claims, its exception undebatably applies only to claims that were not ripe when the prisoner filed his last habeas petition. Indeed, *Panetti*'s stated rationale was that "*Ford*-based incompetency claims, as a general matter, are not ripe until after the time has run to file a first federal habeas petition." 551 U.S. at 943; *see also id.* at 947 ("The statutory bar on 'second or successive' applications does not apply to a *Ford* claim brought in an application filed *when the claim is first ripe*." (emphasis added)). Thus, if a claim was ripe at the time the petitioner filed his prior petition, it falls outside the scope of both *Panetti*'s text and its reasoning.

And Buntion's future-violence claim was undoubtedly ripe when he filed his last petition. As we said in *Buntion II*, the "jury was not asked to find that Buntion would in fact engage in future violence. Rather, the jury was asked to 'find from the evidence . . . [that] there is a probability that . . . Buntion . . . would commit criminal acts of violence.'" 982 F.3d at 951 (quoting Tex. Code Crim. Proc. art. 37.0711, § 3(b)(2)) (alterations

in original)). Put differently, the jury made a "probabilistic assessment" that Buntion was likely to commit further acts of violence. *See id.* It is possible to assess the accuracy of such a probabilistic assessment based on facts in existence *at the time of the assessment*.[2] It follows that, at the time of Buntion's first petition, his future-dangerousness claim was ripe for review. There was no need to postpone that analysis until the State set an execution date. *See id.* at 950–51 (rejecting Buntion's argument as procedurally barred and substantively meritless, but not as unripe). That puts Buntion's claim undebatably beyond *Panetti*'s domain. *See Slack*, 529 U.S. at 484. That is a sufficient reason for denying a COA on this claim.

2.

Second and independently, "jurists of reason would [not] find it debatable whether" Buntion's future-dangerousness claim is procedurally defaulted. *Id.* at 584. "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). If the State "ha[s] . . . firmly established and regularly followed" the rule by the time of the relevant state court decision, then the rule is adequate. *Roberts v. Thaler*, 681 F.3d 597, 604-05 (5th Cir. 2012) (quotation omitted). If the state court decision "clearly and expressly" relies on the state rule to deny relief, or if the decision "does

---

[2] Buntion argues that his claim became ripe only after the State scheduled the execution because his claim turns on facts that exist only *today*—namely, that he has not committed any acts of violence as of *today*. We reject this argument because probabilistic assessments are just that: probabilities. For example, someone might predict that a given event has an 80% chance of happening. That is not an ironclad claim that the event *must* happen; it is an assessment of the odds at the time of the assessment. If the predicted event does not occur *ex post*, that does not prove anything about the *ex ante* probabilistic assessment. The assessment included, after all, a 20% prediction that the event would not occur.

not fairly appear to rest primarily on . . . or to be interwoven with [federal] law," then the state rule is independent. *Coleman v. Thompson*, 501 U.S. 722, 736, 740 (1991) (quotation omitted). If a state procedural rule is adequate and independent, then a state prisoner who fails to comply with it can't obtain federal habeas relief "absent a showing of cause and prejudice." *Id.* at 747.

In its most recent ruling, the CCA dismissed all of Buntion's claims (including his future-dangerousness claim) together "as an abuse of the writ without considering the claims' merits." *Ex parte Buntion*, No. 2022 WL 946264, at *1. It invoked Texas Code of Criminal Procedure article 11.071, § 5 in support. *See id.* That article provides that, "[i]f a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing" one of three enumerated showings. Tex. Code Crim. Proc. art. 11.071, § 5(a). The court held Buntion had "failed to satisfy the requirements" of the statute and dismissed the petition accordingly. *Ex parte Carl Wayne Buntion*, No. 2022 WL 946264, at *1.

Here, Buntion does not contend cause and prejudice excuse his default. Instead, he argues Texas Code of Criminal Procedure article 11.071, § 5 is not independent of federal law.[3] Citing *Ex parte Campbell*, 226 S.W.3d 418 (Tex. Crim. App. 2007), Buntion argues that Texas courts perform a two-step analysis when evaluating article 11.071 sufficiency. First, they ask whether "the factual or legal basis for an applicant's current claims [was] unavailable as to all of his previous applications"; second, they ask whether "the specific facts alleged, if established, would constitute a constitutional

---

[3] Buntion did not address this argument in our court. But for the sake of thoroughness, we address it as he presented it in his habeas petition in district court.

violation that would likely require relief from either the conviction or sentence." *See id.* at 421. And because that second step includes consideration of the Federal Constitution, Buntion contends this analysis cannot be independent of federal law. *See Coleman*, 501 U.S. at 736.

That argument undebatably fails. Most importantly, Buntion's argument misreads *Campbell*. *Campbell* held the following:

> [T]o satisfy Art. 11.071, § 5(a), 1) the factual or legal basis for an applicant's current claims must have been unavailable as to all of his previous applications; and 2) the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence.

226 S.W.3d at 421 (footnotes omitted). Thus, a Texas court may dismiss a claim on the first ground—that the claim's "factual or legal basis" was not "unavailable"—without ever reaching the constitutional issue. *See id.* That is exactly what the CCA did in this case when it "dismiss[ed] the subsequent application as an abuse of the writ *without considering the claims' merits*." *Ex parte Carl Wayne Buntion*, No. 2022 WL 946264, at *1 (emphasis added).

Further, it's undebatable that an unelaborated dismissal under article 11.071, § 5 is based on an adequate and independent state ground. *See Slack*, 529 U.S. at 484. Our court has previously rejected arguments to the contrary:

> The use of federal law as guidance for the enactment and application of the Texas statute cited by the Court of Criminal Appeals as the basis for its rejection of Hughes's claims does not, as Hughes suggests, mean that the court's decision rested primarily on federal law or was interwoven with federal law. No application or interpretation of federal law is required to determine whether a claim has, or could have, been presented in a previous habeas application. The Texas Court of Criminal Appeals did not need to consider or decide the merits of

Hughes's constitutional claims in reaching its decision to dismiss those claims as an abuse of the writ pursuant to Article 11.071, Section 5. Furthermore, there is nothing in its perfunctory dismissal of the claims that suggests that it actually considered or ruled on the merits. Accordingly, its decision was independent of federal law for purposes of application of the procedural default doctrine.

*Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008). This case is indistinguishable. We therefore conclude that it's undebatable that Buntion's future-dangerousness claim is procedurally defaulted. That is an independent reason for denying a COA on this claim. *See Slack*, 529 U.S. at 484.

3.

Independently, "jurists of reason would [not] find it debatable whether" Buntion's future-dangerousness argument "states a valid claim of the denial of a constitutional right." *Slack*, 529 U.S. at 484. That is for at least three reasons.

First, Buntion's argument hinges on *Johnson v. Mississippi*, 486 U.S. 578 (1988). According to Buntion, *Johnson* stands for the proposition that, if a death sentence is predicated partially on a false assumption, the death penalty is arbitrary and therefore barred by the Eighth Amendment. Buntion undebatably misreads *Johnson*. The last time Buntion made this argument, we explained "that is not what *Johnson* says." *Buntion II*, 982 F.3d at 950. We went on:

In fact, the Supreme Court has never intimated that the factual correctness of the jury's prediction on the issue of future dangerousness . . . bears upon the constitutionality of a death sentence. The Court contemplated in cases like [*Barefoot v. Estelle*, 463 U.S. 880 (1983),] that dangerousness evidence might be wrong most of the time. Yet it still did not create a

16

remedy for defendants whose death sentences turned on that evidence.

*Id.* at 950–51 (quotations omitted). Precisely the same reasoning applies here.

Second, Buntion's argument undebatably ignores that the jury's prediction likely played a part in his non-violent behavior. All agree that Buntion has been largely kept away from other prisoners for most of the time he has been on death row. That is because, since 1999, Texas has "house[d] death row inmates separately in single-person cells" and "recreated [those inmates] individually." *See* Texas Department of Criminal Justice, Death Row Information: Death Row Facts, https://www.tdcj.texas.gov/death_row/dr_facts.html. The jury's future-violence prediction was necessary to its imposition of the death penalty, and the imposition of the death penalty is precisely what led to Buntion's separation from other prisoners. In short, it is entirely plausible that Buntion has been non-violent on death row because he is on death row. And it would be backwards to hold the jury's future-dangerousness prediction became retroactively inaccurate precisely by denying Buntion the opportunity to commit violence. Buntion's contrary argument is undebatably wrong. *See Slack*, 529 U.S. at 484.

Third, Buntion's argument rests on the assumption that, in light of his peaceful post-sentencing behavior, the jury's future-violence prediction was wrong. That assumption is undebatably false. Again: A probabilistic assessment can be accurate (*ex ante*) even if it doesn't come true (*ex post*). We reiterate that the jury did not predict Buntion would certainly commit acts of violence. The jury predicted there was "a probability" that he would do so. *Id.* at 951 (quotation omitted). Buntion does nothing to contest that assessment. Therefore, jurists of reason could not debate this claim, and we deny a COA to pursue it. *See Slack*, 529 U.S. at 484.

17

No. 22-70003
c/w No. 22-70004

C.

Now we turn to Buntion's *Lackey* claim. We (1) explain that "jurists of reason would [not] find it debatable whether" § 2244(b)(1) bars this claim. *Slack*, 529 U.S. at 484. Then we (2) explain it is equally undebatable that this claim is procedurally defaulted. *See id.* Finally, we (3) explain that "jurists of reason would [not] find it debatable whether" Buntion's *Lackey* argument "states a valid claim of the denial of a constitutional right." *Id.* Each of these three grounds provides a separate, independent reason for our denial of Buntion's application for a COA under *Lackey*.

1.

Buntion raised his *Lackey* claim in his prior federal habeas petition, arguing "the Eighth Amendment prohibits his execution because of how much time he has spent on death row." *Buntion II*, 982 F.3d at 952. The district court rejected that claim as both meritless and as barred by the Supreme Court's non-retroactivity precedents. *See Buntion v. Davis*, No. 4:17-CV-02683, 38. We denied a COA on that claim because the claim was both "unexhausted" and "undebatably meritless." *Buntion II*, 982 F.3d at 952–53.[4]

As with his other claim, Buntion now attempts to circumvent § 2244 by analogizing to *Panetti*. On his view, the factual predicate underlying this claim is the interval between the date of his sentence and the moment the

---

[4] Though courts are free to dismiss unexhausted claims *without* prejudice, they are also free to *deny* such claims and dismiss *with* prejudice. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The district court did the latter: It denied Buntion's claims and dismissed his petition with prejudice. *See Buntion v. Davis*, No. 4:17-CV-02683, 40 (granting the State's motion for summary judgment, denying Buntion's habeas corpus petition, and dismissing the case with prejudice).

18

State scheduled his execution. And because (part of) that factual predicate did not exist at the time he filed his previous petition, Buntion says, this claim fits within the *Panetti* exception to § 2244's text.

This argument undebatably fails for two independent reasons. *See Slack*, 529 U.S. at 484. First, as we explained above, *Panetti* applies to *Ford* claims. The Supreme Court has not extended it beyond that context, and neither has our court. A *Lackey* claim is undeniably not a *Ford* claim. So jurists of reason could not and would not debate whether the *Panetti* exception applies here. *See id.*

Second, although Buntion has now been on death row for longer than he had been at the time of his last petition, it obviously does not follow that his claim was *unripe* at the time of that filing. *See Buntion II*, 982 F.3d at 952–53 (faulting this argument as unexhausted and meritless, not as unripe). Further, Buntion had been on death row for over 25 years by the time he filed his last petition. *See* Petition for Writ of Habeas Corpus for Carl Wayne Buntion at 101–02, *Buntion v. Davis*, No. 4:17-CV-02683(S.D. Tex. Mar. 5, 2020) ("Because he has been incarcerated on death row for over a quarter of a century, the Eighth Amendment will not permit Buntion's execution."). If *Lackey* claims were a part of the law (and they are decidedly not, as we explain below), Buntion had the legal and factual predicates to raise the claim in his last federal habeas petition. *See, e.g.*, *Barr v. Purkey*, 140 S. Ct. 2594, 2595 (2020) (Breyer, J., dissenting from the order vacating stay) (contending delays of 16 and more than 20 years are long enough to be unconstitutional). Buntion's claim was ripe when he filed that petition, and *Panetti* applies only to claims that were unripe at the time of the prior filling. *See* 551 U.S. at 943 (explaining this). That means Buntion's *Lackey* claim, like his future-dangerousness claim, is undebatably beyond the scope of *Panetti*'s exception and hence is undebatably barred by § 2244(b)(1). That is a sufficient reason to deny a COA on this claim. *See Slack*, 529 U.S. at 484.

19

2.

Second and independently, "jurists of reason would [not] find it debatable whether" Buntion's *Lackey* claim is procedurally defaulted. *Slack*, 529 U.S. at 584. The CCA dismissed Buntion's entire "application," including his *Lackey* claim, "as an abuse of the writ without considering the claims' merits." *Ex parte Buntion*, No. 2022 WL 946264, at *1. Thus, for the same reasons stated above, *see supra*, Part III.B.2, the *Lackey* claim is undebatably defaulted. This is another independent reason for denying a COA on Buntion's *Lackey* claim.

3.

Third and independently, Buntion's claim is "undebatably meritless." *Buntion II*, 982 F.3d at 952. As we explained the last time Buntion raised a *Lackey* claim in our court:

> We, like Justice Thomas, are "unaware of any support in the American constitutional tradition or in th[e] [Supreme] Court's precedent for the proposition that a defendant can avail himself of the panoply of appellate and collateral procedures and then complain when his execution is delayed."

*Id.* at 952–53 (alterations in original) (quoting *Knight v. Florida*, 528 U.S. 990, 990 (1990) (mem.) (Thomas, J., concurring in the denial of certiorari)). Put more simply still: It is beyond reasonable debate that a State does not violate the Constitution by executing an individual after the individual has spent even a very long period of time on death row. *See Slack*, 529 U.S. at 584. This is another independent reason for denying Buntion a COA on his *Lackey* claim.

IV.

Buntion also filed a § 1983 suit, in which he asserted his *Lackey* claim against various individual defendants in their official capacities. In that suit,

No. 22-70003
c/w No. 22-70004

he also asked the district court both for a temporary stay of execution and for an order permanently enjoining the defendants from executing him. The district court denied both and dismissed the suit with prejudice. *See* 28 U.S.C. § 1915A (directing district courts to review "before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to dismiss the complaint if it "fails to state a claim upon which relief may be granted"). Buntion timely appealed. We consolidated Buntion's § 1983 appeal with his request for a COA.

We have already denied a stay. *See supra*, Part II. We will now explain why Buntion's § 1983 suit fails in its entirety. We (A) hold this suit is barred by *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Heck v. Humphrey*, 512 U.S. 477 (1994). Then, we (B) hold in the alternative that the claim would fail on the merits even if not *Heck*-barred.

A.

A prisoner may use a § 1983 suit to challenge conditions of his confinement. *E.g.*, *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). But a prisoner may not use § 1983 to challenge "the fact or validity of the sentence itself" because such challenges "fall within the core of federal habeas corpus." *E.g.*, *id.* at 643–44; *see also Preiser*, 411 U.S. 475, 499 n.14 ("If a prisoner seeks to attack both the conditions of his confinement and the fact or length of that confinement, his latter claim, under our decision today, is cognizable only in federal habeas corpus."); *Heck*, 512 U.S. at 481 (*Preiser* "held that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983."). In short, if "a judgment in favor of the plaintiff would

21

No. 22-70003
c/w No. 22-70004

necessarily imply the invalidity of his conviction or sentence," the claim is not cognizable under § 1983. *Heck*, 512 U.S. at 487.

The same rule applies in the death-penalty context. If a § 1983 claim goes merely to the State's chosen method of execution and does not "necessarily imply" the death sentence is invalid, then *Preiser* does not bar the claim. *See id.* But if the claim's success would "necessarily imply" the death sentence is invalid, then *Preiser* does bar the claim. *See id.*

As we described above, *see supra*, Part III.C, Buntion asserts a *Lackey* claim in his habeas petition and in his COA application. He asserts that same claim (and only that claim) in his § 1983 suit. He insists that he accepts the legality of his 2012 death sentence, and he argues that his challenge goes *only* to the State's method of execution—specifically, the State's decision to execute him after a very long delay between his sentence and his execution.

Notwithstanding Buntion's assertions to the contrary, this claim sounds only in habeas. That is because Buntion's contentions under *Lackey* "necessarily imply . . . the invalidity of his . . . sentence," *see id.*, and it is therefore not a cognizable § 1983 claim. If Buntion were to prevail on his *Lackey* claim, it would follow that the State could not execute him under any circumstances whatsoever. The thrust of Buntion's *Lackey* claim is that the State would violate the Constitution by executing him after so long a time has passed. *See Lackey*, 514 U.S. at 1045–46 (memorandum of Stevens, J., respecting the denial of certiorari) (casting the claim in these terms). At this point in time, there is no way to undo that allegedly unconstitutional delay. Thus, if Buntion prevailed on this claim, it would necessarily follow that the State could not execute him now or ever or in any way. That is merely a different way of saying that his sentence would be invalid. *See Heck*, 512 U.S. at 487. Buntion's claim, then, is not a method-of-execution challenge; it is a challenge to the validity of his death sentence. It is therefore not cognizable

under § 1983. *Cf. Bucklew v. Precythe*, 139 S. Ct. 1112, 1126 (2019) (explaining the Supreme Court has "expressly held that identifying an *available* alternative is a requirement of *all* Eighth Amendment method-of-execution claims" (quotation omitted) (first emphasis added)).

This provides a sufficient basis for affirming the district court's dismissal of Buntion's § 1983 complaint. *See Heck*, 512 U.S. at 490 ("Applying these principles to the present action, in which both courts below found that the damages claims challenged the legality of the conviction, we find that the dismissal of the action was correct.").

### B.

Even if Buntion's *Lackey* claim were cognizable under § 1983, we hold it would fail on the merits. That is for two independent reasons. First, as we explained above in Part III.C.3, *Lackey* claims are not part of the law. They have not ever been accepted by the Supreme Court or our court. Indeed, the shorthand for the claim is a dissental by Justice Stevens that urged (unsuccessfully, obviously) the Court to recognize the claim. *See Lackey*, 514 U.S. at 1421 (memorandum of Stevens, J., respecting the denial of certiorari) (describing the claim as "novel"). That is one independent basis for affirming the district court's dismissal.

Independently, if Buntion were correct that his *Lackey* claim challenges the State's method of execution rather than the sentence of execution itself, his claim would fail under *Glossip v. Gross*, 576 U.S. 863 (2015). As the Court recently clarified, "*Glossip* expressly held that identifying an available alternative is a requirement of *all* Eighth Amendment method-of-execution claims." *Bucklew*, 139 S. Ct. at 1126 (quotation omitted). Buntion does not attempt to identify an available alternative. That omission makes sense: the gravamen of his *Lackey* claim is that, given the

interval between sentencing and today, no method of execution could possibly suffice. But that omission also means the claim must fail.

## V.

The district court's denial of a stay of execution is AFFIRMED. The district court's dismissal of Buntion's § 1983 claim is AFFIRMED. Buntion's motion for stay of execution is DENIED. Buntion's application for a COA is DENIED. All other motions, and all other requests for relief, are DENIED.