# United States Court of Appeals for the Fifth Circuit

No. 22-70005

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2023

Lyle W. Cayce
Clerk

Matthew Johnson,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2310

Before Elrod, Oldham, and Wilson, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

Appellant Matthew Johnson files an application for a certificate of appealability and appeals the district court's denial of his motion to recuse. We DENY the application for a certificate of appealability and AFFIRM the district court's denial of the motion to recuse.

I

The facts underlying Johnson's conviction are not in dispute. They were recorded on a store surveillance camera and played for the jury at

No. 22-70005

Johnson's capital murder trial. In May 2012, Johnson entered a convenience store and poured a bottle of lighter fluid over the head of Nancy Harris, a 76-year-old store clerk. He then demanded money from Harris. As Harris attempted to open the cash register, Johnson stole two cigarette lighters, two packages of cigarettes, and a ring from Harris's finger.

Once Harris opened the cash register, Johnson took the money and then set Harris on fire. As Harris frantically attempted to extinguish herself, video recordings showed that Johnson "calmly" walked out of the store. *Ex parte Johnson,* WR-87,574-01, 2019 WL 4317046, at *1 (Tex. Crim. App. Sept. 11, 2019). Police officers arrived at the convenience store soon after and extinguished the flame. Aided by descriptions given by Harris and neighborhood residents, the police quickly apprehended Johnson. Because of the incident, Harris suffered second-to-fourth degree burns over 40% of her body. She died five days later.

Johnson was indicted for intentionally causing the death of Harris by setting her on fire during a robbery. The jury found him guilty of capital murder as alleged in the indictment. At the punishment stage of his trial, the jury unanimously determined that: (1) Johnson presented future danger to society; and (2) there were insufficient mitigating circumstances to warrant a life imprisonment rather than a death sentence. Accordingly, Johnson was sentenced to death. Tex. Code Crim. Pro. art. 37.071. The Texas Court of Criminal Appeals affirmed his conviction and sentence, *Johnson v. State*, No. AP-77,030, 2015 WL 7354609, at *1 (Tex. Crim. App. Nov. 18, 2015), and the United States Supreme Court denied his petition for certiorari, *Johnson v. Texas*, 579 U.S. 931 (2016). Johnson challenged the validity of his conviction and sentence in a state habeas proceeding, and the Texas Court of Criminal Appeals denied relief. *Ex parte Johnson*, 2019 WL 4317046, at *3.

No. 22-70005

Johnson then petitioned for habeas relief in federal district court. During the pendency of his federal habeas petition, Johnson filed a motion to recuse Judge Ada Brown, alleging that the decisions she made would cause a reasonable person to "harbor doubts about [her] impartiality." *Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999) (citation and quotation marks omitted). The district court denied habeas relief, the motion to recuse, and the application for a certificate of appealability.

II

Before this court, Johnson files an application for a certificate of appealability and appeals the district court denial of his motion to recuse.

A

Under the Antiterrorism and Effective Death Penalty Act, a state court prisoner must obtain a certificate of appealability before appealing a federal district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1)(A). To obtain a certificate of appealability, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citation and quotation marks omitted). The determination "requires an overview of the claims in the habeas petition and a general assessment of their merits" but not "full consideration of the factual or legal bases adduced in support of the claims." *Id.* at 336; *see also Buck v. Davis*, 580 U.S. 100, 115 (2017).

As background, to render a death sentence under Texas law, the State has the burden to prove beyond a reasonable doubt that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. art. 37.071(2)(b)(1); *Druery v. Thaler*, 647 F.3d 535, 546 (5th Cir. 2011). If the jury finds future dangerousness, it must then consider whether there are suf-

3

ficient mitigating circumstances to warrant a sentence of life imprisonment rather than a death sentence. Tex. Code Crim. Proc. art. 37.071(2)(e)(1).

At the sentencing stage of Johnson's trial, several witnesses testified regarding Johnson's criminal history. A police officer and Johnson's ex-girlfriend testified about an incident in which Johnson attempted to break into an apartment where his girlfriend and her children were living. When he failed to break in, he set the back porch of the apartment on fire. Another woman testified about a separate incident where Johnson forced her out from her pickup truck, threw her to the ground, and drove off. And several police officers testified that Johnson has a history of aggravated assault, theft, and evading arrests. After deliberation, the jury answered "yes" to the future dangerousness question and "no" to the mitigation question. Thus, it sentenced Johnson to death.

In his habeas petition before the district court, Johnson challenged the constitutionality of Texas's future dangerousness and mitigation special issues. The district court rejected Johnson's constitutional challenges. Here, Johnson contends he is entitled to a certificate of appealability because reasonable jurists would debate the district court's determination that Texas's future dangerousness and mitigation issues are constitutional. We address each issue in turn.

1

As to future dangerousness, Johnson contends that he is entitled to habeas relief because: the Texas capital sentencing statute's future dangerousness provision is unconstitutionally vague; jury predictions of future dangerousness are inherently unreliable; and his jury was wrong when it predicted he would be violent in the future.

First, Johnson contends that Texas's capital sentencing statute is unconstitutionally vague because it fails to define "probability" and "criminal

acts of violence." Tex. Code Crim. Proc. art. 37.071(2)(b)(1). No reasonable jurist would debate the correctness of the district court's determination on this issue. *Buck*, 580 U.S. at 115–16. The Supreme Court has held that Texas's capital punishment scheme that asks "'whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society' is not unconstitutionally vague." *Tuilaepa v. California*, 512 U.S. 967, 974 (1994) (quoting *Jurek v. Texas*, 428 U.S. 262, 274–76 (1976)). Likewise, in *Woods v. Johnson*, this court applied the Supreme Court's holding in *Jurek* that "reject[ed] the contention that the [future dangerousness] issue is impermissibly vague." 75 F.3d 1017, 1034 (5th Cir. 1996). Since then, we have repeatedly re-affirmed the same holding. *See, e.g.*, *Sprouse v. Stephens*, 748 F.3d 609, 622 (5th Cir. 2014) ("Texas does not run afoul of [Supreme Court precedent] by not expressly defining these terms.") (citation omitted); *Leal v. Dretke*, 428 F.3d 543, 553 (5th Cir. 2005) (listing numerous Fifth Circuit opinions rejecting similar arguments).

Next, Johnson argues that jury prediction of future dangerousness is inherently unreliable, and so capital-punishment schemes that rely on such predictions are arbitrary and thus unconstitutional. Johnson contends that even though the Supreme Court explicitly upheld Texas's future dangerousness question in *Jurek* and *Barefoot*, the reasoning of those decisions "[has] been entirely eroded" in light of new social science research showing the inaccuracy of jury predictions. *Jurek*, 428 U.S. 262; *Barefoot v. Estelle*, 463 U.S. 880 (1983), *superseded by statute on other grounds*, 28 U.S.C. § 2253(c).

In *Jurek*, the Supreme Court observed that although determining future dangerousness is "difficult," it "does not mean that it cannot be [done]." *Jurek*, 428 U.S. at 274–75. Highlighting the prevalence of similar determinations, the Court noted that jury prediction of future dangerousness is "no different from the task performed countless times each day throughout the American system of criminal justice." *Id.* at 276. For example, the Court

observed that similar predictions are made when government officials decide whether to admit a defendant to bail or whether a prisoner should be released on parole. *Id.* at 275. Consequently, the Court rejected the petitioner's argument and held that "'Texas' capital-sentencing procedures . . . do not violate the Eighth and Fourteenth Amendments." *Id.* at 276. As Johnson himself conceded, seven years later, the Supreme Court reaffirmed its holding in *Jurek* that Texas's future dangerousness issue does not violate the Eighth Amendment. *See Barefoot*, 463 U.S. at 899. Johnson contends, however, that the "factual and theoretical foundations" of *Jurek* and *Barefoot* "have been entirely eroded" by subsequent social science research, which demonstrated that jury predictions of future dangerousness are entirely unreliable.

But this argument is plainly foreclosed by our decision in *Buntion v. Lumpkin*, 982 F.3d 945 (5th Cir. 2020). In *Buntion*, we considered the same arguments on this issue that were made by the same lawyers. We addressed the argument that the Texas Code is "unconstitutional because several studies indicate that juries' dangerousness predictions usually prove untrue," and concluded that the argument was "substantively meritless" because "the Supreme Court has twice upheld the exact same provision." *Id.* at 948–50. Faced with unfavorable Supreme Court cases, Buntion (like Johnson) argued that new social science studies "entirely undermine[d] the factual predicate" underlying those cases, and so he invited the court to "ignore" those precedents. *Id.* at 950. The *Buntion* panel correctly refused to do so, noting that only the Supreme Court alone can overrule one of its precedents. *Id.* (citing *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)). Given our holding in *Buntion* controls this issue, no "reasonable jurists would find the district court's assessment" on this issue "debatable or wrong." *Miller-El*, 537 U.S. at 338; *Buck*, 580 U.S. at 115–16.

Finally, Johnson argues that his sentence should be vacated because the jury was wrong when it predicted that he would be violent in the future.

He noted that he "has committed no violent acts while incarcerated," and "[h]is impeccable disciplinary record demonstrates that he poses no threat to guards or fellow inmates." As legal authority, he cites the Supreme Court case in *Johnson v. Mississippi* for the proposition that a death sentence should be vacated when it was "predicated, in part, on a . . . judgment that is not valid now, and was not valid when it was entered." 486 U.S. 578, 585 n.6 (1988). Because his sentence was predicated on the future dangerousness assessment, which he says has been proven wrong by his peaceful behavior in prison, he contends that his sentence should be vacated in accordance with *Johnson v. Mississippi*.

This argument is likewise not debatable for the same reasons seen in *Buntion*. *See Buck*, 580 U.S. at 115–16. Like Johnson, Buntion argued that his sentence should be vacated because *Johnson v. Mississippi* "stands for the proposition that any sentence based on a factual inaccuracy must be vacated" and his peaceful behavior in prison evinced that factual inaccuracy. *Buntion*, 982 F.3d at 950–51. We rejected that argument in *Buntion* for two independent reasons. First, we observed that the petitioner misinterpreted *Johnson v. Mississippi* because "'[t]he Supreme Court has never intimated that the factual correctness of the jury's prediction on the issue of future dangerousness . . . bears upon the constitutionality' of a death sentence." *Id.* (alterations in original) (quoting *Lincecum v. Collins*, 958 F.2d 1271, 1281 (5th Cir. 1992)). Second, we noted that the sentence imposed was not based on factual inaccuracy because the jury was not asked to determine whether Buntion "would in fact engage in future violence." *Id.* at 951. Rather, the jury was asked whether "there is a probability" that he would commit criminal acts of violence. *Id.* (quoting Tex. Code Crim. Proc. art. 37.0711 § 3(b)(2)). Consequently, "the fact that Buntion [] behaved peacefully while in prison did not disprove the jury's probability calculation." *Id.*

7

Even assuming *arguendo* that reasonable jurists could debate the merit of Johnson's argument, it is not debatable that the argument is barred by *Teague*'s non-retroactivity doctrine. *Teague v. Lane*, 489 U.S. 288 (1989). Under *Teague*, "a new rule of law [should] not be applied on collateral review to cases that became final prior to the announcement of the new rule." *Burdine v. Johnson*, 262 F.3d 336, 342 (5th Cir. 2001) (*en banc*) (citing *Teague*, 489 U.S. at 310). Here, Johnson is advocating for a new extension of *Johnson v. Mississippi*. As the district court observed, Johnson did not identify any courts that have adopted his broad reading of that case. To the contrary, controlling caselaw from the Fifth Circuit and the Supreme Court has rejected his argument and upheld the constitutionality of the Texas Code's future dangerousness provision.

Thus, given the multiple on-point precedents and *Teague*'s non-retroactivity bar, no reasonable jurists could debate the correctness of the district court's determination on this issue. *See Sprouse*, 748 F.3d at 609; *Buntion*, 982 F.3d 945; *Buck*, 580 U.S. at 115–16.

2

In addition to challenging the future dangerousness issue, Johnson also challenges the constitutionality of Texas's mitigation issue. Before imposing a death sentence, the Texas Code requires the jury to determine whether there were sufficient mitigating circumstances to warrant lowering the punishment to a life sentence. Johnson contends that Texas's failure to impose the burden of proof on the State to show that there were insufficient mitigating circumstances beyond a reasonable doubt violates the Supreme Court's holding in *Apprendi* and *Ring*. The Supreme Court in *Apprendi* held that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466,

476 (2000) (citation and quotation marks omitted); *see also Ring v. Arizona*, 536 U.S. 584, 602 (2002) ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt."). Johnson argues that because the insufficient-mitigating-circumstances finding is necessary for the death sentence, the prosecution should be required to prove that finding beyond reasonable doubt.

A "general assessment" of this argument, however, indicates that it is foreclosed by several circuit precedents. *Miller-El*, 537 U.S. at 336. In *Rowell v. Dretke*, for example, we noted the "important distinction between 'facts in aggravation of punishment and facts in mitigation.'" 398 F.3d 370, 378 (5th Cir. 2005) (quoting *Apprendi*, 530 U.S. at 490 n.16). The State needs to prove facts in aggravation beyond reasonable doubt. As to facts in mitigation, however, "no Supreme Court or Fifth Circuit authority requires the State to prove the absence of mitigating circumstances beyond a reasonable doubt." *Id.* at 378. In addition, "[n]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof." *Id.*; *see also Scheanette v. Quarterman*, 482 F.3d 815, 828 (5th Cir. 2007) ("We have specifically held that the Texas death penalty scheme did not violate either *Apprendi* or *Ring* by failing to require the state to prove beyond a reasonable doubt the absence of mitigating circumstances."); *Sprouse*, 748 F.3d at 623 (quoting *Scheanette v. Quarterman* and affirming the same holding).

Each of Johnson's arguments for the issuance of a certificate of appealability is foreclosed by on-point binding precedent that "fits like a glove." *Fowler v. United States*, 563 U.S. 668, 672 (2011). Accordingly, no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338; *Buck*, 580 U.S. at 115–16.

9

B

Next, we address the district court's denial of Johnson's motion to recuse. A district judge's refusal to recuse is reviewed for abuse of discretion. *Trevino*, 168 F.3d at 178. "Any . . . judge . . . shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The relevant inquiry is whether a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Trevino*, 168 F.3d at 178 (quoting *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 800 (5th Cir. 1986)) (internal quotation marks omitted). A "reasonable person standard in the recusal context contemplates a 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person.'" *Id.* at 179 (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)) (internal quotation marks omitted).

Here, Johnson alleges that Judge Ada Brown's decisions "would cause a reasonable person, knowing all the circumstances, to harbor doubts about the district court's impartiality." To support his allegation, Johnson points to two specific examples of her bias based upon her legal rulings.

First, Johnson contends that Judge Brown impermissibly "truncate[d]" the time his counsel had to investigate and prepare legal arguments. Under 28 U.S.C. § 2244(d)(1), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." Because Johnson's state habeas petition was denied on September 11, 2019, his 1-year period of limitation ended on September 11, 2020.

Shortly after the denial of his state habeas petition, Johnson's state habeas counsel filed a motion to the federal district court, requesting federal habeas counsel. On October 23, 2019, the court issued an order appointing

the present counsel to represent Johnson.  In that same order, the court instructed Johnson to file his habeas petition by May 1, 2020.  That deadline, Johnson alleges, contradicts 28 U.S.C. § 2244(d) because it was "four-and-a-half months earlier than the applicable deadline," and "[t]he language of the federal statute does not permit a federal court to shorten" that deadline. Based on Judge Brown's reluctance to extend his filing deadline to September 11, 2020 (*i.e.*, the full period allowed by the statute), Johnson contends that Judge Brown is biased.

But Johnson cited no governing legal authority recognizing the right to delay his briefing until the final day of AEDPA's one-year statute of limitations.  To the contrary, it is firmly established that a district court has "the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).  In addition, the Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Accordingly, we hold that "a reasonable person" who knows "all the circumstances" would not "harbor doubts about the district court's impartiality" on this basis. *Trevino*, 168 F.3d at 178; *Buck*, 580 U.S. at 115–16.

Johnson also argues that the district court showed bias when it ordered his attorneys to explain why they should not be sanctioned for making arguments that have been "consistently rejected by the Fifth Circuit for decades."  In response to that order, Johnson asserted that his attorneys "have a duty to raise all meritorious claims in [his] federal habeas petition even if the Supreme Court or [the Fifth Circuit] has yet to articulate a legal basis for those claims." (citing *United States v. Garza-De La Cruz*, 16 F.4th 1213, 1215 (5th Cir. 2021) ("But preserving one's rights just in case is not just reasonable. Failure to do so risks forfeiting the right altogether.")).  Because Johnson believes that the court's order was unwarranted, he asserts that Judge

11

No. 22-70005

Brown's "threatening to sanction [his] attorneys for raising a meritorious claim suggest the district court harbored animus toward Johnson" and "intended to pressure Counsel to withdraw the second claim in Johnson's Petition."

In its order, the district court explained that even though it is generally acceptable for counsel to preserve claims, they nonetheless should acknowledge adverse on-point circuit precedent. In failing to do so, the district court noted that Johnson's counsel might be acting contrary to Rule 11(b)(2) of the Federal Rules of Civil Procedure, which requires counsel to certify that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Given the district court's explanation, we hold that the district court did not abuse its discretion in denying Johnson's motion to recuse. These do not debatably give rise to a claim for relief. *Buck*, 580 U.S. at 115–16.

\*    \*    \*

Because an "overview of the claims in the habeas petition and a general assessment of their merits" indicates that no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," we DENY Johnson's application for a certificate of appealability. *Miller-El*, 537 U.S. at 336, 338; *Buck*, 580 U.S. at 115–16.

As to the motion for recusal, no reasonable person who knows "all the circumstances" would "harbor doubts about [the district court's] impartiality." *Trevino*, 168 F.3d at 178. Thus, we hold that the district court did not abuse its discretion in denying Johnson's motion to recuse. AFFIRMED.