# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2025

Lyle W. Cayce
Clerk

———————

No. 25-70009

———————

Matthew Lee Johnson,

*Plaintiff—Appellant*,

*versus*

Bryan Collier, *Executive Director, Texas Department of Criminal Justice*; Eric Guerrero, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*; Kelly Strong, *Warden, Texas Department of Criminal Justice, Huntsville Unit, Huntsville, Texas*,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:25-CV-2066

———————————————————

Before Elrod, *Chief Judge*, and Oldham and Wilson, *Circuit Judges*.
Per Curiam:

Nearly 13 years ago, Matthew Johnson robbed a convenience store and, as he was leaving the store, used a lighter to set the cashier on fire. She died five days later as a result of her severe burns. Johnson was subsequently convicted of murder and given a death sentence in a Texas district court in 2013. His execution date is set for Tuesday, May 20, 2025. He has known about his scheduled execution date, and the alleged procedural errors in the

setting of that date, for over three months. On Friday, May 16, he filed an appeal of a denial of a stay and a request for a stay to halt his execution. Because, as the federal district court correctly determined, he cannot prevail under the *Nken* factors to establish grounds for a stay, we AFFIRM. We also DENY Johnson's request for a stay by this court.

I

As we previously recounted in Johnson's federal habeas case, "[t]he facts underlying Johnson's conviction are not in dispute":

> In May 2012, Johnson entered a convenience store and poured a bottle of lighter fluid over the head of Nancy Harris, a 76-year-old store clerk. He then demanded money from Harris. As Harris attempted to open the cash register, Johnson stole two cigarette lighters, two packages of cigarettes, and a ring from Harris's finger.
>
> Once Harris opened the cash register, Johnson took the money and then set Harris on fire. As Harris frantically attempted to extinguish herself, video recordings showed that Johnson "calmly" walked out of the store. Police officers arrived at the convenience store soon after and extinguished the flame. Aided by descriptions given by Harris and neighborhood residents, the police quickly apprehended Johnson. Because of the incident, Harris suffered second-to-fourth degree burns over 40% of her body. She died five days later.

*Johnson v. Lumpkin*, 74 F.4th 334, 337 (5th Cir.) (citation omitted), *reh'g en banc denied*, 76 F.4th 1037 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 829 (2024).

A jury found Johnson guilty of capital murder. Pursuant to the jury's answers to the special issues submitted at the sentencing proceeding, the state trial court sentenced Johnson to death. *See* Tex. Code Crim. Proc. Ann. art. 37.071. On direct appeal, the Texas Court of Criminal Appeals affirmed his conviction and sentence, *Johnson v. State*, No. AP-77,030, 2015 WL

No. 25-70009

7354609, at *1 (Tex. Crim. App. Nov. 18, 2015) (not designated for publication), and the United States Supreme Court denied his petition for *certiorari*, 579 U.S. 931 (2016).

Johnson also challenged his conviction and sentence in various habeas proceedings. In Johnson's state habeas proceeding, the trial court held a live evidentiary hearing, entered findings of fact and conclusions of law, and recommended that the Court of Criminal Appeals deny relief. *See Ex parte Johnson*, No. WR-86,571-01, 2019 WL 4317046, at *2 (Tex. Crim. App. Sept. 11, 2019) (not designated for publication). The Court of Criminal Appeals conducted an independent review of the record, adopted the trial court's findings and conclusions with one exception, and denied relief. *Id.* at *3.

In Johnson's federal habeas proceeding, the district court denied relief and a certificate of appealability. *Johnson v. Lumpkin*, 593 F. Supp. 3d 468, 477 (N.D. Tex. 2022). The district court also denied Johnson's motion for recusal. *Id.* We likewise denied Johnson's application for a certificate of appealability, and we affirmed the district court's denial of the recusal motion. *Johnson*, 74 F.4th at 337. Johnson then filed a petition for rehearing *en banc*. *See Johnson*, 76 F.4th at 1039. "Because no member of the panel or judge in regular active service requested that the court be polled on rehearing *en banc*," the petition was denied. *Id.* (first citing Fed. R. App. P. 35; and then citing 5th Cir. R. 35). Johnson petitioned for *certiorari* again, and the Supreme Court again denied *certiorari* on February 20, 2024. *Johnson*, 144 S. Ct. at 829.

On October 2, 2024, the Texas attorney general's office sent a letter to the state trial court informing the court that "[s]tate and federal litigation of this case is now complete" and the court could thus schedule an execution date pursuant to Article 43.141 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 43.141. The office provided dates that were

3

available for Johnson's execution, and it offered to represent the state *pro tem* if the district attorney chose not to participate. The attorney general's office has sent similar letters to Dallas County district courts concerning other death-row inmates. Johnson responded the next day, asserting that the attorney general's office "lack[ed] authority to suggest this Court schedule Mr. Johnson's execution or represent the State in any subsequent state-court litigation" and asking the court to "take no action."

Subsequently, on October 30, the trial court reached out to Johnson's counsel and the district attorney's office, as well as the attorney general's office. The court informed counsel that it had "review[ed] both submissions and consider[ed] the issues raised" and concluded that the court had sole authority under Article 43.141 to set the execution date once appellate remedies were exhausted. Accordingly, the court stated that it was "prepared to move forward in selecting a date for execution" and sought input from the parties on the execution date. The attorney general's office responded that its proposed dates remained available. Johnson's counsel also responded. Johnson's counsel agreed that "the authority for setting an execution date rests solely with the convicting court" but maintained that the attorney general's office could not represent the state's interests by requesting an execution date. Although he requested that the court not set an execution date at that point, counsel stated that Johnson preferred May 20, 2025, over the other proposed dates. The attorney general's office also followed up later to inform the court that one of the proposed dates was no longer available. The district attorney's office did not respond at all. On January 20, 2025, the trial court set Johnson's execution date for May 20, 2025.

No. 25-70009

On April 14, Johnson filed a motion for leave to file a petition for writ of mandamus in the Texas Court of Criminal Appeals.[1] *In re Matthew Lee Johnson*, No. WR-86,571-02 (Tex. Crim. App. dismissed Apr. 28, 2025). That motion and proposed petition asserted that the trial court's method of setting the execution date exceeded its authority under Article 43.141 of the Texas Code of Criminal Procedure and violated Johnson's due process and equal protection rights. The Court of Criminal Appeals denied the motion without a written order on April 28.

Finally, on May 7, about two weeks before his scheduled execution date, Johnson filed the instant suit in federal district court. He filed a 42 U.S.C. § 1983 complaint against three officials in the Texas Department of Criminal Justice, contending that the process by which his execution date was set violated his Fourteenth Amendment rights. In particular, he asserted that: (1) the state trial court's failure to follow the proper procedures for scheduling his execution date violated his right to due process; and (2) the involvement of the attorney general's office instead of the district attorney violated his right to equal protection. He asked the district court to "[f]ind that the execution order violates Johnson[']s rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses" and "[s]tay his execution currently set for May 20, 2025." Johnson also separately moved for a stay of execution pending the resolution of his lawsuit.

The district court denied the motion for a stay and, because the suit could not proceed without a stay, dismissed the case with prejudice. The district court analyzed the factors for a stay enumerated in *Nken v. Holder*, 556 U.S. 418, 434 (2009), and concluded that three of the four factors

---

[1] Johnson asserts that this delay was because his counsel requested e-mails related to the setting of his execution date on March 10 and did not receive some of those e-mails until April 7.

5

weighed against a stay. Most importantly, the district court held that Johnson had not shown a substantial likelihood of success on either of his constitutional claims. *See id.* This appeal followed.

## II

We review a district court's denial of a stay of execution for abuse of discretion. *United States v. Vialva*, 976 F.3d 458, 460 (5th Cir. 2020). Courts consider four factors when evaluating whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quotation omitted); *Vialva*, 976 F.3d at 460–61.

The first factor weighs heavily against Johnson: he is highly unlikely to succeed on the merits. We start with Johnson's due process argument. "To plead a violation of his due process rights, [Johnson] must show that [the defendants] deprived him of a constitutional right while acting under color of state law." *Reed v. Goertz*, --- F.4th ----, No. 19-70022, 2025 WL 1261412, at *4 (5th Cir. May 1, 2025). "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. However, "process itself is not a protectable end." *Reed*, 2025 WL 1261412, at *4 (citing *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67 (2009)). "Rather, for the Due Process Clause to attach and its protections to obtain, a plaintiff must identify a protected 'liberty interest.'" *Id.* (quoting *Osborne*, 557 U.S. at 67). As we explain below, Johnson fails to do so.

Johnson posits that his due process rights have been violated because the state attorney general's office alerted the trial court that all habeas proceedings had been exhausted and notified it of available execution dates.

Importantly, he does not contend that he lacked adequate notice of his scheduled execution date. *Cf.* Tex. Code Crim. Proc. Ann. art. 43.141(b-1) (requiring a copy of an order setting an execution date to be sent to the condemned person's counsel). Indeed, his own allegations reveal that he knew that the court was planning to set his execution date for about three months before the date was set. He also knew about the alleged interference by the attorney general's office *and* the possibility that the state trial court would act upon that suggestion another month before that, as his counsel "request[ed] the Court refrain from heeding [the attorney general's office's] suggestion and refrain from entering any order scheduling Johnson's execution" on October 3. And Johnson was represented during that time.

As a federal court, we do not review whether state courts have followed state procedural rules unless their failure to do so presents a federal constitutional issue. *Cf. Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016) ("Plaintiffs' claims seeking enforcement of [a state statute] may only proceed in federal court if a provision of federal law or the United States Constitution creates a right to the enforcement of [the statute]."); *Pruett v. Choate*, 711 F. App'x 203, 206 n.10 (5th Cir. 2017) ("Unless Pruett's due-process rights were violated, he has no avenue to relief except through a command for Texas courts properly to enforce Texas law. But . . . federal courts lack a 'general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought.'" (quotation omitted)). Even if the state trial court's actions did not conform to Article 43.141, "a mere error of state law is not a denial of due process." *See Jordan*, 823 F.3d at 811 (quoting *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011)). The same reasoning applies to Johnson's contentions about the roles of the district attorney and attorney general pursuant to the Texas Constitution's separation of powers. Johnson's argument that the state trial court's execution-setting procedure was an unlawful deviation from Texas

law was properly brought in Texas courts. *See id.* at 812. He cannot now come to the federal courts for the relief that the Texas Court of Criminal Appeals denied him.

Even assuming *arguendo* that we could review Johnson's claim, Johnson cannot show that the state trial court actually failed to follow Article 43.141. Simply put, nothing in that statute requires the process that Johnson insists upon. Article 43.141 sets out the procedures applicable to a convicting court's scheduling of an execution date. *See* Tex. Code Crim. Proc. Ann. art. 43.141. If a habeas petition is filed, "the convicting court may not set an execution date before" that proceeding is complete. *Id.* art. 43.141(a). However, if no habeas petition is filed, "the convicting court may set an execution date." *Id.* art. 43.141(b). The remainder of the article sets out requirements for notice, the timing of the execution date, and modifying or withdrawing an order setting an execution date in limited circumstances; none of those provisions are at issue here. *See id.* art. 43.141(b-1)–(e). As the defendants contend and the district court held, nothing in Article 43.141 requires that the district attorney—or any attorney for the state—move for the scheduling of the execution date. Indeed, Johnson concedes that the convicting court may schedule an execution date *sua sponte*. Further, nothing in the statute prevents the attorney general's office from providing the court information or bars the convicting court from considering that information. Accordingly, Johnson has not shown that the trial court violated the applicable procedures in his case.

Most importantly, nothing in Johnson's complaint shows that there was a federal due process violation. As the district court aptly noted, "Johnson does not precisely define the due process rights which he believes govern execution setting." That is a generous description. Johnson expounds upon due process only in the vaguest terms. However, "process itself is not a protectable end." *Reed*, 2025 WL 1261412, at \*4. And Johnson

fails to point to a liberty interest that is to be protected. *See id.* He cannot identify any federal or state law that clearly creates a right to only be executed if the district attorney seeks the setting of an execution date. We will not truffle hunt for due process violations when the briefing has not unearthed any. *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 n.8 (5th Cir. 2016) ("Judges are not like pigs, hunting for truffles buried in briefs." (quotation omitted)).

Johnson's equal protection claim is likewise unavailing. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Johnson maintains that if he is executed on the date scheduled by the trial court, he will have been treated differently from other death-row inmates in Dallas County because only he "will have been executed pursuant to action by the Attorney General and not any local official." His complaint appears to rely on a "class of one" theory. Under such a theory, "the plaintiff must show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Id.* (quoting *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012)). Here, the fact that the attorney general's office has sent similar letters regarding other death-row inmates in Dallas County undermines Johnson's argument that he has been treated differently. We also agree with the district court that Johnson has not met the second prong of the test. As the defendants assert, it was not irrational for the attorney general's office to provide information about the status of Johnson's habeas challenges and available execution dates to the state trial court. And even if, as Johnson complains, the attorney general's office did so in order to prompt the trial court to schedule an execution date, the state has a legitimate interest in the

timely enforcement of a death sentence, *see Bucklew v. Precythe*, 587 U.S. 119, 149 (2019), and the letter was rationally related to that interest.

In short, Johnson's constitutional claims cannot succeed on the merits. His due process claim fails on at least three grounds: it asks for relief that the federal courts do not provide; it is unsupported by the text of the statute; and it fails to identify a protected liberty interest. His equal protection claim is similarly flawed. Accordingly, he has not shown a likelihood of success on the merits, and the first *Nken* factor weighs heavily against him.

Johnson also has not shown that any of the other three *Nken* factors warrant a stay. *See Nken*, 556 U.S. at 434. Of course, "the death penalty itself is irreversible." *Vialva*, 976 F.3d at 462. However, Johnson's complaint expressly states that he "is not asking for relief from his death sentence." He "is not challenging his death sentence, but only the pre-execution procedures for carrying it out." *Id.* As a result, he would face the same irreparable harm even if a stay were granted. So the irreparable-harm factor is neutral in this case. Further, "there comes a time when the legal issues 'have been sufficiently litigated and re-litigated so that the law must be allowed to run its course.'" *Id.* (quoting *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982)). The third factor weighs against Johnson because "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence," which would be frustrated if a stay were issued. *Bucklew*, 587 U.S. at 149 (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). As to the fourth factor, "the public's interest in timely enforcement of the death sentence outweighs [Johnson's] request for more time." *Vialva*, 976 F.3d at 462. The district court did not abuse its discretion by denying a stay, and we likewise deny Johnson's request for a stay.

No. 25-70009

Finally, in the conclusion of his opening brief, Johnson contends that "because [he] was entitled to a stay, the district court erred in dismissing his Complaint with prejudice." He devotes no further argument to that point. We have affirmed the dismissal with prejudice of § 1983 claims in similar circumstances when we agreed with the district court that a stay was not warranted. *See Young v. Gutierrez*, 895 F.3d 829, 831–32 (5th Cir. 2018); *Smith v. Johnson*, 440 F.3d 262, 263 (5th Cir. 2006) (affirming dismissal with prejudice of dilatory complaint seeking to stay execution). Thus, we conclude that the district court did not err in dismissing Johnson's complaint.

Accordingly, we AFFIRM the judgment of the district court and DENY Johnson's motion to stay his execution.